**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **AMERICAN ATHEISTS, INC., et al.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **1:15-cv-00113-MW-GRJ** |
| | : | |
| **v.** | : | **JUDGE MARK E. WALKER** |
| | : | |
| **LEVY COUNTY,** | : | **MAGISTRATE JUDGE** |
| | : | **GARY R. JONES** |
| **Defendant.** | : | |
| | : | **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT LEVY COUNTY'S MOTION FOR SUMMARY JUDGMENT</u>**

Mathew D. Staver (Fla. 701092)
Horatio G. Mihet (Fla. 26581)
Roger K. Gannam (Fla. 240450)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776 Telephone
407-875-0770 Facsimile
court@LC.org
hmihet@LC.org
rgannam@LC.org

Donovan A. Roper (Fla. 858544)
ROPER & ROPER, P.A.
116 North Park Avenue
Apopka, FL 32703
407-884-9944 Telephone
407-884-4343 Facsimile
email@roperandroper.com

Attorneys for Defendant,
Levy County

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

SUMMARY JUDGMENT STANDARD ............................................................ 1

STATEMENT OF FACTS ................................................................................. 2

I.     THE LIMITED PUBLIC FORUM AND THE MONUMENT PLACEMENT
GUIDELINES ........................................................................................ 2

II.    TRI-COUNTY PREGNANCY CENTER'S TEN COMMANDMENTS
MONUMENT ......................................................................................... 6

III.   PLAINTIFFS' DEFICIENT MONUMENT APPLICATIONS AND FAILURE
TO COMPLY WITH THE GUIDELINES ............................................ 8

     A.    Plaintiff Charles Ray Sparrow and the Williston Atheists.............. 8

     B.    Plaintiff American Atheists, Inc. .................................................... 8

     C.    First Application – Williston Atheists ............................................ 9

     D.    Amended Application – Williston Atheists and American Atheists ............. 11

IV.   PLAINTIFFS' ILLUSORY INJURY ................................................... 13

ARGUMENT ................................................................................................... 15

I.     PLAINTIFFS HAVE NO STANDING ............................................... 15

     A.    Plaintiffs Have No Standing to Sue under the Establishment Clause............. 16

     B.    Plaintiffs Have No Standing to Sue under the Equal Protection Clause.......... 20

II.    PLAINTIFFS' CLAIMS FAIL ON THE MERITS ............................ 24

     A.    Plaintiffs' Establishment Clause Claim Fails Because the Challenged
Monument Is Purely Private Speech in a Limited Public Forum ................... 24

          1.    The challenged monument is purely private speech ........................... 24

          2.    The private speech at issue occurs in a limited public forum for
private expression ............................................................................ 25

a.      The Guidelines establish a limited public forum ....................25

b.      The size and stability of the monuments do not negate the County's limited public forum .................................................26

B.      Even If the Challenged Monument Is Government Speech It Does Not Violate the Establishment Clause ....................................................28

C.      Plaintiffs' Equal Protection Claim Fails Because Plaintiffs Are Not Similarly Situated............................................................................29

CONCLUSION.........................................................................................................33

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT .......................................34

CERTIFICATE OF SERVICE ....................................................................................34

## TABLE OF AUTHORITIES

### CASES

*ACLU v. Rabun County*, 698 F.2d 1098 (11th Cir. 1983) ................................................................17

*Alabama Freethought Assoc. v. Moore*,
    893 F. Supp. 1522 (N.D. Ala. 1995).....................................................................16,17,18,19

*Am. Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*,
    690 F.3d 1244 (11th Cir. 2012) ........................................................................................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................1

*Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) ...................................................25

*Bowen v. First Family Financial Servs.*, 233 F.3d 1331, 1340 (11th Cir. 2000) .........................17

*Campbell v. Rainbow City*, 434 F.3d 1206 (11th Cir. 2006) ........................................................30

*Capital Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995)..........................................24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................1

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)..................................25

*E&T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1996) .........................................................30

*Elend v. Basham,* 471 F.3d 1199, 1207 (11th Cir. 2006) .............................................................17

*Engel v. Vitale*, 370 U.S. 421 (1962) ............................................................................................28

*Freedom From Religion Found., Inc. v. Weber*, 628 Fed. App'x 952 (9th Cir. 2015).................27

*Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee County*,
    477 F. Supp. 2d 1246 (S.D. Fla. 2007) ............................................................................21

*Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003) ..............................................16,17,19

*Harvey v. Cobb County*, 811 F. Supp. 669 (N.D. Ga. 1993) ........................................................17

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) .......................................16

*Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217 (1st Cir. 2013)...........................................1

*KH Outdoor, L.L.C. v. Clay Cnty.*, 482 F.3d 1299 (11th Cir. 2007) ............................................21

*KH Outdoor, L.L.C. v. Fulton County, Ga.*, 587 Fed. Appx. 608 (11th Cir. 2014).....................23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) .......................................................15,16

*Lynch v. Donnelly*, 465 U.S. 668 (1984).........................................................................................28

*Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37 (1983) .....................................25

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009)........................................22,23,26,27

*Reynolds v. Sims*, 377 U.S. 533 (1964)............................................................................................30

*Roma Outdoor Creations, Inc. v. City of Cumming*,
    599 F. Supp. 2d 1332 (N.D. Ga. 2009) ........................................................................21,22,23

*Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir. 1987).....................................................17

*Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963) .....................................................28

*Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996) ...................................................................30

*Summum v. City of Ogden*, 152 F. Supp. 2d 1286 (D. Utah 2001)............................................31,32

*Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983).............................................................1

*The Nationalist Movement v. City of York*, 481 F.3d 178 (3d Cir. 2007) ......................................22

*Valley Forge Christian College v. American United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982).....................................................................................................1,16,19,20

*Van Orden v. Perry*, 545 U.S. 677 (2005) .................................................................................28,29

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................................20,21

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. art. III, §2..................................................................................................................15,21

U.S. Const. amend. 1 ........................................................................................................................24

U.S. Const. amend. XIV, §1 .............................................................................................................30

Rule 56, Federal Rules of Civil Procedure .......................................................................................1

## OTHER AUTHORITIES

Anson Phelps Stokes, *Church and State in the United States Vol. I* (1950),
    https://archive.org/details/churchandstatein012700mbp .........................................................12

## INTRODUCTION

This case does not require the Court to pick a winner between secularism and religion; it requires only that the Court uphold the Constitution. Plaintiff Sparrow's mere displeasure with the thought of a Ten Commandments monument he has barely encountered gives the Court no jurisdiction to adjudicate Plaintiffs' Establishment Clause claim, and Plaintiffs' utter failure to comply with unchallenged, neutral rules for their own monument (that Sparrow does not even want) deprives the Court of jurisdiction over their Equal Protection claim. Lack of standing aside, Plaintiffs cannot prevail on the merits of their Establishment Clause claim because the Ten Commandments monument is purely private speech in a limited public forum, or constitutionally secure government speech, and Plaintiffs cannot prevail on their Equal Protection claim because Plaintiffs are in no way similarly situated to those who have followed the County's lawful rules. The County is entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

"The summary judgment stage is the 'put up or shut up moment in litigation.'" *Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013). Summary judgment is mandatory where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). To survive a Motion for Summary Judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *See Anderson*, 477 U.S. at 252. In this case, there are no material facts in dispute and the County is entitled to judgment as a matter of law.

<u>**STATEMENT OF FACTS**</u>

The record evidence in this case includes the following depositions and affidavits, filed contemporaneously herewith:

- Deposition of Plaintiff Charles Ray Sparrow ("Sparrow");

- Deposition of Kenneth Edward Loukinen, as Rule 30(b)(6) Representative of Plaintiff American Atheists, Inc. ("Am.Atheists");

- Deposition of Anne B. Brown, Esq., as Rule 30(b)(6) Representative of Defendant Levy County ("County");

- Declaration of Jim Jones ("Jones").

All depositions taken by Plaintiffs share a common set of exhibits, designated by letter (*e.g.*, "Dep.Ex.A"). All depositions taken by the County share a common set of exhibits, designated by number (*e.g.*, "Dep.Ex.1").

**I.    THE LIMITED PUBLIC FORUM AND THE MONUMENT PLACEMENT GUIDELINES.**

In or around 1996, the Levy County Veterans Support Group and other donors erected a large stone monument in a courtyard area between the Levy County Courthouse and an administrative building, dedicated "IN MEMORY OF THOSE WHO SERVED OUR COUNTRY IN ALL WARS" (the "Veterans Monument").  (Jones, ¶4, Ex.B.) The flagpole was placed in the courtyard later. (*Id.*, ¶5.) The area where the monuments were placed includes a walkway between the buildings, primarily used by Levy County prosecutors and public defenders going to and from the courthouse. (County 19:9-21:9.)

In 2008 or 2009, a member of the public inquired with County officials about placing a Ten Commandments monument near the Courthouse. (*Id.* at 13:8-15:2, 16:7-13.) Either the County Coordinator, Fred Moody, or a County Commissioner brought the request to the County Attorney, Anne Brown, to determine whether such a monument would be constitutional. (*Id.* at

13:8-15:2, 15:19-16:13.) Brown researched the issue, as was her practice when asked by a County official to advise how the County may legally fulfill a constituent request. (*Id*. at 16:22-17:8.) Brown concluded that the County should adopt neutral guidelines to govern the placement of private monuments on County property. (*Id*. at 13:22-15:10, 17:9-15.)

It was recommended to Brown that she consult attorney Horatio Mihet of Liberty Counsel regarding drafting appropriate guidelines. (*Id*. at 12:23-13:6.) In June 2009, Brown consulted Mihet, and he provided draft monument guidelines for Brown's consideration. (*Id*. at 12:11-20, 17:16-18:1; 163:8-22, Dep.Ex.R at [1, 12-14][1].)

Brown reviewed the draft guidelines and made changes and additions to align them with the County's intent to recognize the existing limited public forum between the courthouse and administrative building, where the Veterans Monument and flagpole were located. (County 12:1-10, 21:20-22:16; Dep.Ex.R [1, 13].) Brown's revisions reflected the County's intention that the guidelines uphold a limited public forum in this area "that could house many more monuments," for the private placement of monuments in the future, and remove from County Commissioners any constitutionally problematic discretion in considering monument applications. (Dep.Ex.R [1, 13-14].) Brown's revisions reflected also her intention that the guidelines bind applicants to effective insurance and indemnification provisions to protect the County. (*Id.*) The Commissioners voted to approve the final version of the Monument Placement Guidelines (the "Guidelines"). (County 23:23-24:15; 44:7-9, Dep.Ex.A.)

---

[1]     Deposition Exhibit R is a composite exhibit, introduced by Plaintiffs at the deposition of Brown, comprising various e-mails produced by the County (which, as arranged by Plaintiffs for the exhibit, include many duplicates). Citations to pages within the exhibit refer to page numbers as if all the pages of the exhibit were numbered consecutively, [1]-[28].

Through the Guidelines, the County "acknowledges that an area exists which traditionally has been used for private expression by citizen groups, including through the erection of monuments, which area is located in the grassy and paved areas between Levy County Courthouse and the administrative office building . . . (the 'Forum')." (Dep.Ex.A, §1.1 Intent.) The Guidelines express the County's purpose "to confirm the existence of a **limited public forum** . . . and to clarify the terms and conditions upon which monuments may be erected therein **by private citizens**." (*Id.* (emphasis added).) To this end, and in keeping with the nature and character of the forum as evidenced by the existing Veterans and flagpole monuments (which the County deemed "vested"), the Guidelines declare: "The Forum exists and shall be used for the purpose of erecting monuments of [sic] displays **commemorating people, events and ideas which played a significant role in the development, origins or foundations of American or Florida law, or Levy County**." (*Id.* (emphasis added).)

Space in the Forum is available "on a first-come, first-served basis." (*Id.*) Though multiple future monuments may be accommodated, display space is not unlimited; thus, the Guidelines require "that monuments and displays comply strictly with the criteria, regulations and procedures listed in these Guidelines." (*Id.*)

Eligibility to place monuments in the Forum is limited to "residents of Levy County or organizations that maintain an office and provide services in Levy County." (*Id.*) A person or group desiring to erect a monument or display within the Forum must make a written application to the County, in which the applicant must agree that "the full cost of the monument or display will be borne by the applicant." (*Id.*, §1.2 Application.) The individual or group, **not the County**, is responsible for the costs of the monument and for placing the approved monument in the Forum, and it is the applicant's sole responsibility to maintain the monument, repair it, modify it, and

remove it if required. (*Id.*) The applicant is also responsible for maintaining an insurance policy for its monument, and must agree to indemnify the County from all claims arising from the monument. (*Id.*, §1.5.c.vi ("Application Procedures").)

The Guidelines also impose strict suitability requirements for proposed monuments. First, "[a] monument or display shall include the reproduction of the entire text or image of any document or person(s), or entirety of any item that played a significant role in the development, origins or foundations of American or Florida law, or Levy County." (*Id.*, §1.3 Definition of Suitable Items.) "The size, color, and design of the monument or display shall be such as comports with the Levy County Courthouse and the Administrative Building and existing displays in the Forum." (*Id.*) The Guidelines exclude any proposed monument or display that is "libelous, pornographic or obscene." (*Id.*) "The monument or display shall be of such size or structure as to be incapable of being quickly removed and of such manner that it does not pose any physical harm to passersby." (*Id.*)

The Guidelines require the Levy County Board of County Commissioners to vote to approve or deny an application. (*Id.*, §1.5.b.)  Denied applications may be appealed to the Board. (*Id.*, §1.5.e.) The Board may deny an application only for failure to comply with the Guidelines or lack of available space. (*Id.*, §1.5.d.)

As required by the Guidelines, the County placed a sign at the front corner of the Forum "advising members of the public and passersby that **the items displayed in the Forum do not necessarily reflect the views of Levy County or the Board, and are not sponsored or endorsed by Levy County or the Board**." (*Id.*, §1.4 Disclaimer (emphasis added); Jones, ¶7, Ex.D.)

## II.   TRI-COUNTY PREGNANCY CENTER'S TEN COMMANDMENTS MONUMENT.

The first application submitted to the County under the Guidelines was by Tri-County Pregnancy Center, Inc., to place a Ten Commandments Monument in the Forum. (County 39:9-13, Dep.Ex.B.[2]) The application was forwarded to Brown's office. (County 24:20-25, 27:19-28:9, 39:14-40:8.) Brown assisted Moody in reviewing the application for compliance under the Guidelines. (*Id*. at 25:1-26:1.) Reviewing first for completeness, Brown determined a sketch was missing, and notified Moody.[3] (*Id*. at 26:2-27:6, 42:8-16.) Brown also notified Moody that if approved, the applicant must meet the Guidelines' insurance requirements. (*Id*. at 26:17-27:1, 42:8-21.) Brown searched the Florida Secretary of State's records to determine that Tri-County Pregnancy Center was a legally viable organization that would be able to meet the insurance and indemnification requirements. (*Id*. at 42:22-45:12.)

The application included photographs showing that the proposed monument would depict two stone tablets containing the Ten Commandments. (Dep.Ex.B; County 75:10-76:18.) Drawing on her research of Supreme Court cases and other sources, Brown understood there to be no definitive version of the Ten Commandments because the original stone tablets are not available, and the commandments' meaning has been passed down through generations and translations. (County 76:10-79:9, 81:6-82:10, 84:16-86:21, 89:9-14, 174:5-20.) Brown concluded that the text depicted on the proposed monument was a complete, recognized version of the Ten Commandments, and that the monument depicted the entirety of the Ten Commandments as an "item" under the Guidelines in any event. (*Id.*) Brown did not consider any Bible to be the

---

[2]   The last page of Plaintiffs' Deposition Exhibit B is not part of the application submitted to the County. (County 40:21-41:19.)

[3]   The missing sketch was received and added to the application before submission to the Board for consideration. (County 27:7-11.)

exclusive source of the text of the Ten Commandments. (*Id.* at 76:10-80:2, 81:6-82:10.) Thus, Brown understood the application to propose a monument depicting the Ten Commandments as shown in the photographs attached to the application, and not a monument depicting the Bible, a book of the Bible (*e.g.*, Exodus), or text from any book of the Bible. (*Id.*)

Brown also concluded that the Ten Commandments monument satisfied the Guidelines' requirement that a monument commemorate events or ideas which played a significant role in the development, origins or foundations of American law. (*Id.* at 60:15-63:20, 125:2-126:3.) Brown knew from Supreme Court precedent and other research conducted while developing the Guidelines, and throughout her career, that the Ten Commandments have been recognized as holding a special place in the development of American law, such that they are displayed for secular purposes on the Supreme Court building and in numerous other government places. (*Id.*)

Having concluded that the Tri-County application met the Guidelines, Brown prepared a proposed order granting the application for submission to the Board. (*Id.* at 27:7-11, 31:1-33:16, 34:13-22, 111:12-113:23; Dep.Ex.I.) The Board received and processed the application through the public notice and meeting requirements specified in the Guidelines, and voted to adopt the order approving the application. (*Id.*)

Plaintiffs' Complaint alleges that the "Levy County Board of County Commissioners unveiled the [Ten Commandments] Display through a religious ceremony including prayers and invocations . . . ." (Compl., ECF No.1, ¶11.) But through discovery, Plaintiffs admitted **they have no knowledge or evidence of such a ceremony**.[4] (Sparrow 92:24-95:4; Atheists 62:4-63:17.)

---

[4]      In its Order Denying Motion to Dismiss (ECF No. 19), the Court treated this bald allegation, now shown to be baseless, as critical to its conclusion that Plaintiffs' Complaint stated a plausible Establishment Clause claim. (Order at 10 ("It is enough that it alleges that the County approved the placement of a large Ten Commandments monument in the courtyard of the Levy

The Tri-County monument is located approximately 208 feet from the only public entrance to the courthouse, **and is not visible from the entrance**. (Jones, ¶¶8-9, Ex.E, Ex.F.) The monument is not visible from either of the two main roads going through Bronson. (*Id*. at ¶11.)

## III.   PLAINTIFFS' DEFICIENT MONUMENT APPLICATIONS AND FAILURE TO COMPLY WITH THE GUIDELINES.

### A.   Plaintiff Charles Ray Sparrow and the Williston Atheists.

Sparrow is an atheist who lives in Levy County. (Sparrow 6:24-7:2, 10:18-25.) Sparrow is also a founding member of Williston Atheists, an unincorporated, informal group of atheists who share information about the "secular community." (*Id*. at 16:17-17:7, 25:20-24, 26:25-27:20.) Sparrow was one of two leaders of Williston Atheists, though the group has no officers or directors, no formal polices, and no requirements for membership. (*Id*. at 22:14-23:7, 24:17-21, 25:9-19, 27:24-28:2.) Williston Atheists has never entered into a contract or carried insurance coverage for any purpose. (*Id*. at 28:21-29:14.) Besides Sparrow, only one or two Williston Atheists live in Levy County. (*Id*. at 36:20-37:3.)

### B.   Plaintiff American Atheists, Inc.

Plaintiff American Atheists, Inc. is a "membership organization dedicated to advancing and preserving the complete separation of church and state . . . ." (Compl., ¶7.) American Atheists is a New Jersey Corporation which is not authorized to do business in the State of Florida, and which has no office in Levy County or in Florida. (County 150:18-152:19; Atheists 13:6-24; 48:12-19.) American Atheists conducts no activities in Levy County, apart from an occasional visit by its North Florida Regional Director. (Am.Atheists 48:20-49:7.)

---

County courthouse **and the Board unveiled the monument through a religious ceremony which included prayers**." (emphasis added)).)

Williston Atheists is an "affiliate" of American Atheists. (Sparrow 29:16-18.) The relationship is a "very loose affiliation;" Williston Atheists is not a subsidiary, agent, or legal representative of American Atheists, and has no authority to legally bind or otherwise act on behalf of American Atheists. (Dep.Ex.18; Atheists 21:2-14, 23:8-24:6, 36:23-37:5; Sparrow 140:16-141:25.) Likewise, American Atheists has no authority to act on behalf of Williston Atheists. (Am.Atheists 37:6-9.)

Sparrow held a membership card from American Atheists which expired in February 2017. (Sparrow 33:10-34:8.) Regardless of membership, Sparrow has no authority to act on behalf of American Atheists. (Am.Atheists 36:23-37:5.)

## C.    First Application – Williston Atheists.

On January 13, 2014, Sparrow submitted a monument application on behalf of Williston Atheists (the "Application"). (Sparrow 47:13-48:7, Dep.Ex.1.) Sparrow had read the Guidelines, and understood they applied to the Application. (Sparrow 54:6-55:8.) The Application proposed a monument to atheism, comprising a granite monolith and attached bench, with the American Atheists name and/or logo on three sides, a quote from Madalyn Murray O'Hair, ten Bible quotations citing at least three books of the Bible, and three quoted excerpts from eighteenth century letters. (Dep.Ex.1.)

Brown received the application for review. (County 92:25-93:19.) Brown could tell immediately that there were deficiencies under the Guidelines, regarding both the ambiguous legal status of Williston Atheists, and the several proposed text excerpts which did not depict the entirety of any text or item. (*Id*. at 93:20-95:6, 104:5-105:17.) Brown searched the Secretary of State's records for Williston Atheists to assess its ability to meet the insurance and indemnity requirements, but found no record of its existence. (*Id*. at 103:14-104:23.) Brown also researched

9

the documents from which the proposed excerpts were quoted, and confirmed that the quotes did

not compose the entirety of any text or item. (*Id*. at 104:25-109:1.)

Brown prepared a staff report regarding the Application's deficiencies, for Moody's review

and signature, and presentation to the Board. (*Id*. at 119:8-120:22, 127:20-127:25; Dep.Ex.N.[5])

The Staff Report lists the following deficiencies:

> . . . . It is not clear from the narrative in the Applications what role
> . . . most of the people, ideas, or portions of documents depicted on
> the proposed monument played in the development, origins, or
> foundation of American or Florida Law, or Levy County.
>
> . . . .
>
> The proposed monument contains a wide variety of text and images.
> There are several issues with the proposed texts and images that may
> lead to a determination that the proposed monument does not meet
> this criterion. While the Application mentions that the "texts are
> represented on attachments relating to by whom said, when and for
> what reason as stated in our Constitution," this description does not
> indicate how any of the texts or images displayed relate to the
> Constitution, nor does it clarify what portion of the texts or images
> are "as stated in our Constitution." In addition, none of the texts on
> the proposed monument appear to be a reproduction of the *entire*
> text of any document or person, as required in the Guidelines . . . .

(Dep.Ex.N ("1.3 Definition of Suitable Items").) The staff report additionally catalogues the

specific deficiencies with each item of proposed content for the monument, such as the failure of

the applicant to explain the connection between American or Florida law or Levy County and the

American Atheists name and logo or any other of the individual features of the proposed

monument (*Id.*)

In addition to the disqualifying deficiencies above, the staff report also highlighted the

concern with the legal status of Williston Atheists as an entity, and its resulting ability to meet the

insurance and indemnity requirements. (*Id.*)

---

[5]     The last two pages of Exhibit N are not part of the staff report identified by Brown.

On February 18, 2014, after reviewing and considering the Application, the County issued its Opinion and Order to Deny the Application, concluding it "was not complete and proper in that it fails to comply with Sections 1.2 and 1.3 of the Monument Guidelines as set out in the staff report, which staff report is attached hereto as Exhibit 'A' and incorporated herein by this reference." (Sparrow 60:3-61:10, Dep.Ex.3.[6])

**D.     Amended Application – Williston Atheists and American Atheists.**

On March 20, 2014, Sparrow, on behalf of Williston Atheists, and American Atheists jointly submitted an Appeal and Amended Monument Placement Application (the "Amended Application"). (Sparrow 69:23-71:6, Dep.Ex.5.) The Amended Application again proposed a monument to atheism, using the same design, but with revised content. Instead of the first Application's O'Hair quote and Bible quotations under the heading "Punishments for Breaking the Ten Commandments," the Amended Application proposed Article I, Section 3 of the Florida Constitution, the First Amendment to the United States Constitution, Section 1 of the Fourteenth Amendment to the Constitution, "The Original Pledge of Allegiance" (excluding "under God"), and a clause quoted from the Treaty of Tripoli ("As the Government of the United States of America is not, in any sense, founded on the Christian religion..."), along with the previously proposed American Atheists name and logo, and quoted excerpts from Founders' letters. (Dep.Ex.5.)

Brown reviewed the Amended Application and concluded it had many of the same defects as the initial Application, and created new problems with the addition of American Atheists as a co-applicant, because of the requirement that an organizational applicant have an office and

---

[6]     Deposition Exhibit 3 is missing one page of the staff report. The full staff report is included in Deposition Exhibit N.

provide services in Levy County. (County 129:2-130:17.) Brown drafted a new staff report, for Moody's signature and presentation to the Board, cataloguing the deficiencies with the Amended Application. (*Id*. at 143:8-145:7; Dep.Ex.O (attaching the staff report as Exhibit "A" to the Opinion and Order to Deny).)

The deficiencies with the Amended Application included the following:

- Secretary of State records revealed American Atheists, Inc., is not authorized to do business in Florida, contrary to its representation in the Amended Application, raising doubt as to its eligibility as an organizational applicant having an office and providing services in Levy County. (Dep.Ex.O ("1.2a. Staff Review").)

- The previously proposed American Atheists name and logo were again proposed for inclusion, again without showing the required connection between the name or logo and American or Florida law or Levy County. (*Id.* ("1.3a Staff Review").)

- The previously proposed excerpts from the Jefferson, Adams, and Franklin letters were again proposed for inclusion, again without the entirety of the texts or items. (*Id.*)

- The newly proposed quote from the 1797 Treaty of Tripoli, while potentially significant historically, did not include the entirety of the text (or any complete sentence) of the Treaty, or otherwise depict the entirety of the Treaty as an item. (*Id.*)[7]

In addition to the foregoing deficiencies, the County's concerns with the legal status of Williston Atheists as an entity remained unaddressed. (*Id.* ("1.2a Staff Review").)

---

[7]    Plaintiffs' selected clause from the 1797 Treaty of Tripoli, and perhaps the treaty itself, is of questionable significance in the development of American law:

> The clause has often been quoted by those who wished to deny that the United States as a government has any special regard for the Christian religion, but they have almost invariably failed to call attention to the fact that the treaty was superseded, less than a decade later, by another "Treaty of Peace and Amity," signed in Tripoli June 4, 1805, in which the clause in question denying that the United States "is, in any sense, founded on the Christian religion" is omitted.

Anson Phelps Stokes, *Church and State in the United States Vol. I*, at 498 (1950), https://archive.org/details/churchandstatein012700mbp.

The Amended Application did propose some content, however, that could be accepted as compliant with the entirety of text and significance requirements—the First Amendment to the United States Constitution, and the original Pledge of Allegiance, without the reference to "under God." (*Id.* ("1.3a Staff Review").) Brown believed the First Amendment had acquired the status of a "stand-alone" document, though also part of the Constitution, and Bill of Rights. (County 135:13-136:3.)

On May 20, 2014, after reviewing and considering the Amended Application, the County issued its Opinion and Order to Deny the Amended Application, concluding it "was not complete and proper in that it fails to correct the deficiencies of the Initial Application, and it fails to comply with provisions of Sections 1.2 and 1.3 of the Monument Guidelines, all as set out in the staff report, which staff report is attached hereto as Exhibit 'A' and incorporated herein by this reference." (Dep.Ex.O.)

**Plaintiffs have no knowledge of any reason for denial of the Amended Application beyond the reasons stated in the denial order, and never submitted an application correcting the deficiencies in the order**. (Am.Atheists 58:16-21, 79:18-25; Sparrow 82:11-84:9.) Instead, Plaintiffs filed this lawsuit.

## IV.   PLAINTIFFS' ILLUSORY INJURY.

Sparrow saw the Tri-County monument at the Levy County Courthouse, but he cannot remember when, or why he was at the courthouse when he saw it. (Sparrow 42:18-43:17.) Sparrow cannot recall what he did when he saw it. (*Id*. at 43:10-13.) Sparrow candidly concedes that he may have gone to the courthouse for the specific purpose of seeing the monument. (*Id*. at 43:18-20.)

Sparrow has taken notice of the motto, "In God We Trust," displayed in the Levy County Courthouse and other government offices, on the Great Seal of the State of Florida and on the State

13

Flag of Florida incorporating the Seal, all of which he finds objectionable. (*Id*. at 106:18-112:13 ("I'm not offended by it. I'm frightened by it . . . .").) Sparrow also objects to a Ten Commandments monument on government property. (*Id*. at 143:22-144:7.) **But he does not want an atheist monument either**. (*Id*. at 144:9-22 ("**I don't want to put a monument on the courthouse lawn. The atheists don't want a monument there. It's not the place for everybody to put their little ideas and beliefs. That's not what it's for. I prefer that there be no Ten Commandments monument and no atheist monument**." (emphasis added)).) If an atheist monument is placed in the Forum, however, Sparrow does not care about its contents. (*Id*. at 62:21-64:14 ("I determined that the content of the text on the monument was irrelevant and really of no interest to me whatsoever. . . . The monuments could be blank and have religious on one, secular on the other. . . . I don't care about them. To me, they're not important. They're irrelevant.").)

Sparrow has not been to the Levy County Courthouse for about three years.[8] (*Id*. at 37:22-38:7.) Sometime more than three years ago, Sparrow attempted to renew a disabled parking permit at the Levy County Courthouse, but was declined because renewal required a re-certification by a doctor. (*Id*. at 38:14-39:14.) At that time, Sparrow considered the medical condition that originally justified the permit to be corrected, so he did not need the permit. (*Id*. at 39:8-14.) Also more than three years ago, Sparrow paid a traffic fine at the courthouse, which he does not expect to do again in the future. (*Id*. at 46:10-47:10.) Longer ago still, Sparrow occasionally renewed his car registration at the courthouse, but began renewing by mail at least four years ago. (*Id*. at 41:6-42:6.) Sparrow lives about twelve miles from the courthouse, and **has no reason to go to the courthouse again at any time in the foreseeable future.** (*Id*. at 37:19-21, 43:21-25.)

---

[8]     Sparrow's deposition was taken on August 10, 2016, almost one year ago. All chronological references herein that are based on Sparrow's deposition testimony are adjusted to reflect the one-year passage of time.

Sparrow has not suffered any economic injury resulting from the presence of the Tri-County monument or the denial of his monument applications. (*Id*. at 138:10-20.) Sparrow's only claimed injury from the Tri-County monument is his displeasure. (*Id*. at 133:10-23.) Sparrow's hostility to religion, and Christianity in particular, is strident and absolute. (*See, e.g.*, Sparrow 126:16-24 (acknowledging belief that "anyone who believes in the Christian Bible is at fault for the Orlando massacre of 50 people in the Pulse night club"); 120:11-121:1, Dep.Ex.16 (writing in Op-Ed to Property Appraiser, "Ozzy, there are no gods, devils, demons, angels, spirits, ghosts, souls, talking snakes, virgins don't have kids and the dead do not come back to life. All that is primitive, supernatural, ignorant, silly nonsense, made up by people who thought the earth was flat . . . ."); 145:6-148:2, Dep.Ex.19 at 5 (commenting on Facebook about pregnancy of Christian reality show member, "Another Khriztian brood sow spit'em out for Khrist.").)

American Atheists has no injury beyond Sparrow's, as he is the only individual on whom American Atheists relies for its associational standing in this case. (Am.Atheists 33:5-34:4, Dep.Ex.21.)

## ARGUMENT

### I.   PLAINTIFFS HAVE NO STANDING.

The Constitution limits judicial power to actual cases and controversies. *See* U.S. Const. art. III, §2. Article III standing requires, at an "irreducible minimum," a showing that a plaintiff "has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," that the injury "fairly can be traced to the challenged action," and that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. American United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992). And, "[s]ince they are not mere pleading requirements but rather **an indispensable part of the plaintiff's case**, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* (emphasis added).

A.     **Plaintiffs Have No Standing to Sue under the Establishment Clause.**

Plaintiffs' claim an Establishment Clause violation based on Sparrow's "unwelcome contact" with the Tri-County monument "resulting from the need to use county facilities available only at the Levy County Courthouse." (Compl., ¶9.) Sparrow's standing to bring this claim depends on his ability to prove he satisfies the "irreducible minimum" requirements of Article III. American Atheists' standing depends on Sparrow's standing, because Sparrow is the only member on whom American Atheists relies for associational standing in this case. (Compl., ¶7; Dep.Ex.21.) *See Am. Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1248 (11th Cir. 2012) ("An organization has standing to bring an action on its members' behalf if . . . 'its members would otherwise have standing to sue in their own right . . . .'" (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). Sparrow has no standing to bring the Establishment Clause claim he feigns because he has no actual injury, and, therefore, American Atheists also lacks standing.

"For Establishment Clause claims based on non-economic harm, the plaintiffs must identify a 'personal injury suffered by them *as a consequence* of the alleged constitutional error, **other than the psychological consequence presumably produced by observation of conduct with which one disagrees**.'" *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003) (quoting *Valley Forge*, 454 U.S. at 485) (bold emphasis added). "Eleventh Circuit authority has repeatedly held that, in order to have standing to obtain injunctive or declaratory relief in Establishment Clause cases, **a plaintiff must allege and prove that the pursuit of his regular affairs causes exposure to the challenged activity**." *Alabama Freethought Assoc. v. Moore*, 893 F. Supp. 1522,

1540 (N.D. Ala. 1995) (emphasis added) (citing *ACLU v. Rabun County*, 698 F.2d 1098 (11th Cir. 1983), *Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir. 1987), *Harvey v. Cobb County*, 811 F. Supp. 669 (N.D. Ga. 1993)). Furthermore, the threat of being exposed to an allegedly unconstitutional religious display must be "'real and immediate,' and 'certainly impending.'" *Id.* at 1536; *see also Elend v. Basham,* 471 F.3d 1199, 1207 (11th Cir. 2006) ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent."); *Bowen v. First Family Financial Servs.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (concluding "'perhaps' or 'maybe' chance" of future injury "is not enough to give them standing").

Moreover, mere "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects," *Alabama Freethought*, 893 F. Supp. 1522 at 1534-35 (internal quotation marks omitted), "such as where the plaintiffs are forced to assume special burdens to avoid unwelcome religious exercises." *Glassroth*, 335 F.3d at 1292 (internal quotation marks omitted).

Sparrow has no Establishment Clause injury sufficient to confer standing. Though he alleges "unwelcome contact" with the Tri-County monument, he cannot remember when he saw it, why he was there, or what he did when he saw it; and he might have even sought it out on purpose. (Sparrow 42:18-43:17, 43:10-13, 43:18-20.) However unwelcome his forgettable (and perhaps voluntary) contact may have been, it is clear his only injury is the constitutionally insufficient "psychological consequence." Sparrow has no regular business or affairs at the courthouse which could bring him into contact with it, or which could cause him "special burdens" by his having to avoid the courthouse. Apart from renewing a disabled parking permit (which he no longer requires), paying a traffic fine (which he expects not to do again), renewing his car registration (which he now does by mail and has for years), and attending a hearing on a monument

17

application (for a monument he does not want)—**all more than three years ago**—Sparrow has

had no reason to go to the courthouse, and **has no reason to go to the courthouse in the**

**foreseeable future**. (Sparrow 37:19-38:7, 38:14-39:14, 41:6-42:6, 43:21-25, 46:10-47:10, 133:10-

23, 138:10-20, 144:9-22.)

In *Alabama Freethought Association,* plaintiffs challenged a Ten Commandments plaque

in a courtroom and the judge's practice of uttering prayers in jury organizing sessions. 893 F. Supp.

at 1540. Plaintiffs were residents of the county and claimed they may have to enter the courtroom

as jurors, litigants, witnesses or observers. *Id.* at 1525. The court found plaintiffs' assertions that

they might be required to appear in the courtroom insufficient for standing. *Id.* at 1537. Quoting

*Lujan*, the court reasoned that standing cannot be based upon "such 'some day possibilities.'" *Id.*

at 1537. "The remote possibility that a future injury may happen is not sufficient to satisfy the

'actual controversy' requirement for declaratory judgments." *Id*. at 1538.

As the *Alabama Freethought Association* court noted*,* the Eleventh Circuit "has repeatedly

held that, in order to have standing to obtain injunctive or declaratory relief in Establishment

Clause cases, a plaintiff must allege **and prove** that the pursuit **of his regular affairs** causes

exposure to the challenged activity." *Id*. at 1540 (emphasis added). "In all of these cases, plaintiffs

had standing because **their regular course of business** (or pleasure as was in part the case in

*Rabun County*) **repeatedly** subjected them to the allegedly unconstitutional conduct." *Id*.

(emphasis added). Thus, "[i]n this case, plaintiffs have neither alleged nor provided evidence to

suggest that their business affairs or other activities include their making **regular** appearances in

defendant's courtroom." *Id*. at 1541 (emphasis added).

Sparrow has established that his activities and affairs **exclude** making regular trips to the

Levy County Courthouse, putting him on the same footing as the plaintiffs in *Alabama*

*Freethought Association*. Conversely, Sparrow is unlike the attorneys whose professional responsibilities required that they regularly encounter a Ten Commandments monument in a courthouse. *See Glassroth*, 335 F.3d at 1292. The attorneys were forced to alter their behavior to avoid the monument, such as by purchasing law books and online research tools and hiring a messenger to file documents. *Id.* The Eleventh Circuit held these continuing injuries sufficient for standing. *Id.* Sparrow has not altered anything.

Sparrow is also unlike the plaintiffs in *Rabun County*¸ who were forced to use other camping areas to avoid contact with an unwanted religious symbol, and therefore satisfied the immediacy standard. 698 F.2d at 1108. In addition, the cross in question was clearly visible from the porch of one plaintiff's summer cabin, as well as from the roadway he had to use to reach it, leaving him little choice but to continually view the cross. *Id.* Under those circumstances, the plaintiffs established "particular and personalized noneconomic injury to distinguish them from the general citizenry who may be as equally offended on a philosophical basis but who are not as specifically or perceptibly harmed . . . ." *Id.* In contrast here, the monument is not visible from the courthouse entrance or either of the main roads running through the town. (Jones, ¶¶8,9,11.)

The record shows that Sparrow does not have to alter his conduct or affect his livelihood to avoid the Tri-County monument. There is no evidence of any cognizable injury, leaving Plaintiffs with nothing more than their conclusory "unwelcome contact" allegation. (Compl., ¶9). This is essentially the same claim that the Supreme Court unequivocally rejected in *Valley Forge*: "Although [plaintiffs] claim that the Constitution has been violated, they claim nothing else." 454 U.S. at 485. "It is evident that [plaintiffs] are firmly committed to the constitutional principle of separation of church and state, but **standing is not measured by the intensity of the litigant's**

**interest or the fervor of his advocacy**." *Id.* at 486 (emphasis added). Consequently, Sparrow, and by extension, American Atheists, do not have sufficient injury to confer standing.

Sparrow's testimony also establishes that he, and by extension, American Atheists, cannot meet the third prerequisite for standing, a substantial likelihood that the injury will be redressed by a favorable decision. *Valley Forge*, 454 U.S. at 472. To meet this final prerequisite, Plaintiffs must establish that the relief they seek **will remove the harm suffered**. *Warth v. Seldin*, 422 U.S. 490, 507 (1975).

Sparrow already has no expectation of carrying on business or affairs at the courthouse in the foreseeable future. (Sparrow 37:19-21, 43:21-25.) Removal of the Tri-County monument on Establishment grounds will not take him there sooner. Moreover, should Sparrow have occasion to return to the courthouse—even if the Tri-County monument is removed—he will be nonetheless surrounded by offense; namely, the motto, "In God We Trust," which is toxic to Sparrow. (Sparrow 106:18-112:13.) What Sparrow is not likely to see at the courthouse, even in the absence of any intervention by this Court, is the Tri-County monument, because the monument is not visible from the only public entrance. (Jones, ¶9.). And, whereas the Tri-County monument is over 200 feet and not visible from the courthouse entrance (*Id.*, ¶¶8-9), "In God We Trust" is inside, on every Florida Flag and Seal. (Sparrow 106:18-112:13.) The relief Plaintiffs seek will not remove the harm of "unwelcome contact" Sparrow claims to suffer. Accordingly, Plaintiffs lack standing under the Establishment Clause, and the County is entitled to judgment as a matter of law.

### B.     Plaintiffs Have No Standing to Sue under the Equal Protection Clause.

The Complaint contains a total of three, threadbare allegations concerning Plaintiffs' Equal Protection Claim: Plaintiffs applied to place a monument next to an alleged unconstitutional display; Plaintiffs' applications were denied; and the denial was wrongful. (Compl., ¶¶16, 17 ,32.) On those three paragraphs alone, Plaintiffs attempt to invoke this Court's judicial power under

Article III, to declare the County violated Plaintiffs' Equal Protection rights, and to force the County to allow Plaintiffs' non-compliant monument. The evidence, however, shows Plaintiffs do not have standing to assert an Equal Protection claim because their alleged injury is not redressable. Furthermore, Sparrow cannot show any injury-in-fact.

Beginning with Sparrow's lack of injury-in-fact, "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. 490, 499 (1975) (internal quotation marks omitted). Sparrow, however, never submitted a monument application for himself. Both the initial and amended applications for the atheist monument were filed by Sparrow **on behalf of Williston Atheists**, an unincorporated association. (Dep.Ex.1, Dep.Ex.5.) **Sparrow does not even want an atheist monument, and if one were placed, he does not care what is on it**. (Sparrow 62:21-64:14, 144:9-22) Thus, Sparrow, personally, was not injured by the County's denial of the atheist monument applications, and therefore lacks standing to challenge the denials.[9]

Turning to redressability, Plaintiffs cannot demonstrate that any favorable decision from this Court will result in redress of their injuries. *See, e.g.*, *KH Outdoor, L.L.C. v. Clay Cnty.*, 482 F.3d 1299, 1303-04 (11th Cir. 2007); *Roma Outdoor Creations, Inc. v. City of Cumming*, 599 F. Supp. 2d 1332, 1340-41 (N.D. Ga. 2009). "Several courts, including the Eleventh Circuit, have

---

[9]   If Williston Atheists wants to challenge the denials of its applications, it may be able to do so as a "person" under 42 U.S.C. § 1983, but it would have to satisfy all standing requirements itself, including the requirements of associational standing—based on a member other than Sparrow. *See Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee County*, 477 F. Supp. 2d 1246, 1249–51 (S.D. Fla. 2007) (holding unincorporated association is "person" under 42 U.S.C. § 1983 with associational standing). This, Williston Atheists has not done and cannot do.

recently concluded that a plaintiff challenging a sign ordinance cannot demonstrate redressability **if the plaintiff's permit applications violate unchallenged provisions of the ordinance**." *Id.* at 1340 (collecting cases) (emphasis added).

In *Roma*, the plaintiff applied to erect a sign under an ordinance, but the proposed sign violated unchallenged height requirements. *Id.* at 1341. The Court found that the deficient application eliminated any chance of redressability of constitutional claims because it did not comply with the law's mandates and there was no allegation the mandates were unconstitutional. *Id.* "Because plaintiff has not facially challenged the height or separation requirements, a favorable outcome on plaintiff's First Amendment claims would not alter the end result: plaintiff would not be able to erect either sign, as they do not comport with these provisions." *Id.* Thus, "because plaintiff's First Amendment claims arising out of the denial of the variance applications are not redressable, plaintiff lacks standing to raise the merits of those claims." *Id.*

The same is true here. Plaintiffs claim that their application was "wrongfully denied." (Compl., ¶32). Plaintiffs' applications, however, clearly failed to comply with requirements of the Guidelines that Plaintiffs have not—or constitutionally cannot—challenge. Though Plaintiffs have not explicitly identified any provision of the Guidelines that was wrongfully applied to them, the only reasonable implication of their pleading is that they claim unequal treatment, as compared to Tri-County Pregnancy Center, based on their atheistic viewpoint. It is undisputed, however, that American Atheists has no office and provides no services in Levy County (County 150:18-152:19; Am.Atheists 13:6-24; 48:12-19), making it ineligible to apply under the Guidelines (Dep.Ex.A, §1.1 Intent). "The Supreme Court has upheld residency requirements such as this under a rational basis test . . . ." *The Nationalist Movement v. City of York*, 481 F.3d 178, 183 n.4 (3d Cir. 2007); *see also Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 480 (2009) (contemplating

government establishment of private speech forum limited to town residents). American Atheists' ineligibility under the Guidelines requires denial of any monument application it may submit, regardless of the viewpoint to be expressed on the monument.

It is likewise clear that Williston Atheists has no legal capacity, or even existence, sufficient to satisfy the insurance and indemnification requirements of the Guidelines. (Sparrow 16:17-17:7, 22:14-23:7, 24:17-21, 25:9-24, 26:25-27:20, 27:24-28:2, 28:21-29:14; County 103:14-104:23; Dep.Ex.N; Dep.Ex.O.) And, together, Plaintiffs utterly failed to meet the Guidelines' viewpoint-neutral provisions requiring the entirety of text and historical-legal significance for documents proposed as monument contents. (DepEx.N, Dep.Ex.O.) Critically, while they imply, without any proof, that the County denied their monument application on account of their atheism, Plaintiffs candidly admit that they **have no knowledge of any reason for denial beyond the reasons stated in the denial order, and never submitted an application correcting the deficiencies in the order**. (Am.Atheists 58:16-21, 79:18-25; Sparrow 82:11-84:9.) Thus, as in *Roma*, failure to comply with numerous viewpoint-neutral provisions of the Guidelines eliminates any chance of redress by a favorable decision by this Court.[10] Accordingly, Plaintiffs lack standing to assert an Equal Protection claim, and the County is entitled to judgment as a matter of law.

---

[10]    The Court's concern with the County's invocation of the "same-decision" rule at the motion to dismiss stage is obviated by the complete record now before the Court on summary judgment. *See KH Outdoor, L.L.C. v. Fulton County, Ga.*, 587 Fed. Appx. 608, 615 (11th Cir. 2014) (Hinkle, J., concurring in part) ("When it is *clear* that the defendant would have made the same decision anyway, it is of course clear that the plaintiff will be unable to obtain redress.").

II.    **PLAINTIFFS' CLAIMS FAIL ON THE MERITS.**

A.    **Plaintiffs' Establishment Clause Claim Fails Because the Challenged Monument Is Purely Private Speech in a Limited Public Forum.**

Plaintiffs cannot prevail under the Establishment Clause, which provides, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. 1. "By its terms that Clause applies only to the words and acts of *government*. It was never meant, and has never been read by this Court, to serve as an impediment to purely *private* religious speech connected to the State only through its occurrence in a public forum." *Capital Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 767 (1995). "**Religious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms**." *Id.* at 770 (emphasis added).

Plaintiffs' Complaint merely recites the elements of a generic Establishment Clause cause of action (Compl. 4-5.) Contrary to Plaintiffs' bald allegations, however, the challenged monument is purely **private speech in a limited public forum**. Thus, Plaintiffs' claim fails as a matter of law.

1.    **The challenged monument is purely private speech.**

As the Guidelines make abundantly clear, the Forum was set apart for "private expression by citizen groups," for "erecting monuments of [sic] displays commemorating people, events, and ideas which played a significant role in the development, origins, or foundations of American or Florida law, or Levy County." (Dep.Ex.A, §1.1.) Additionally, the Guidelines mandate that applicants: (a) bear the cost of producing and placing the monuments; (b) are required to maintain the monuments at their expense; (c) provide insurance for monuments; and (d) bear the costs of repairing or removing monuments. (*Id.*, §§1.2, 1.5.) Moreover, the County explicitly and

conspicuously announces that the messages conveyed by monuments in the limited public forum are solely those of the private individuals or groups placing them there. (*Id.*, §1.4.)

As the provisions of the Guidelines reveal, monuments placed in the forum are designed, constructed, placed, owned, maintained, and insured solely by **private individuals and groups** placing them there. These facts are undisputed. There is no evidence whatsoever before this Court that the Tri-County monument is not the private speech of Tri-County.

<strong>2.      The private speech at issue occurs in a limited public forum for private expression.</strong>

The Guidelines establish beyond cavil that the Forum is a limited public forum. (Dep.Ex.A.) The fact that monuments in the limited public forum may be large and durable does not diminish this uncontroverted fact.

<strong>a.      The Guidelines establish a limited public forum.</strong>

"[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for speech or assembly, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) (citing *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45-46 & n.7 (1983)). Such limited or designated public fora can only be "created by purposeful government action." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).

Through the Guidelines, the County intentionally and explicitly confirmed the existence of a limited public forum for private expression. Indeed, the "Intent" of the Guidelines states that "an area exists which traditionally has been used for private expression by citizen groups, including through the erection of monuments." (Dep.Ex.A, §1.1.) "Through these Guidelines, the Board desires to confirm the existence of a limited public forum . . . ." (*Id.*) The County explicitly states that access to the limited public forum for private expression is "made available on a first-come,

25

first-served basis to residents of Levy County or organizations that maintain an office and provide services in Levy County." (*Id.*) These provisions establish that the County has intentionally designated a limited public forum for private expression.

> **b.    The size and stability of the monuments do not negate the County's limited public forum.**

That monuments placed in the Forum may be large and durable does not change that the County expressly and intentionally opened up a limited public forum for precisely this type of private expression. The Supreme Court's decision in *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), does not compel a different conclusion. There, the issue was whether a private group could force an **unwilling** government to accept the group's monument into a closed, government-owned, and government-maintained display, in a public park. *Id.* at 464. The group attempted to force the monument into the park on a traditional public forum analysis, but, exactly the opposite from Levy County, the government there maintained that it never intended to open a public forum, preferring instead to take responsibility and ownership of monuments as its own, government speech. *Id*. at 465, 467. In rejecting the attempt, the Supreme Court observed the group "does not claim that the City ever opened up the Park for the placement of whatever permanent monuments might be offered by private donors," and that the reality of the government-owned display indicated just the opposite—the government was selective in which monuments it would accept from private donors, **took ownership of the monuments**, and **maintained** the monuments in its park. *Id.* at 472-73. The Court also reasoned, "it is hard to imagine how a public park could be opened up for the installation of permanent monuments by every person or group wishing to engage in that form of expression." Thus, the Court held the government-owned and -curated display was government speech. *Id.* at 480.

While the Supreme Court noted that "permanent monuments displayed on public property **typically** represent government speech," *id.* at 470 (emphasis added), there is no doubt the Court did not hand down a categorical rule that all large monuments constitute government speech *per se*, in every situation, as a matter of law. Indeed, the Court explicitly left room for a limited public forum involving "permanent" monuments:

> **To be sure, there are limited circumstances in which the forum doctrine might properly be applied to a permanent monument**—for example if a town created a monument on which all of its **residents (or all those meeting some other criterion)** could place the name of a person to be honored or **some other private message**.

*Id.* at 480 (emphasis added); *cf. id.* at 470 ("[A] government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.").

Justice Souter's concurrence also highlights the Court's narrow conclusion. *Id.* at 485 ("I have qualms…about accepting the position that public monuments are government speech categorically."); *id.* at 487 ("[T]here are circumstances in which government maintenance of monuments does not look like government speech at all. Sectarian identifications on markers in Arlington Cemetery come to mind. And to recognize that is to **forgo any categorical rule at this point.**" (emphasis added)); *see also Freedom From Religion Found., Inc. v. Weber*, 628 Fed. App'x 952, 957 (9th Cir. 2015) (Smith, J., concurring) ("**[*Summum*] did not create a categorical rule against forum analysis when dealing with permanent monuments.**" (emphasis added)).

Because the monuments displayed in the County's limited public forum represent private, not government, expression, the Establishment Clause is simply inapplicable. Plaintiffs cannot prevail on their claim.

**B.      Even If the Challenged Monument Is Government Speech It Does Not Violate the Establishment Clause.**

Even if the privately-sponsored Tri-County monument in the County's limited public forum somehow constitutes government speech, which it does not, the monument still would not violate the Establishment Clause. In *Van Orden v. Perry*, 545 U.S. 677 (2005), the Supreme Court addressed the precise issue raised here: "The question here is whether the Establishment Clause of the First Amendment allows display of a monument inscribed with the Ten Commandments on the Texas State Capitol grounds. **We hold that it does**."545 U.S. at 681 (emphasis added). Indeed, contrary to the allegations in Plaintiffs' Complaint, "we have not, and do not, adhere to the principle that the Establishment Clause bars any and all governmental preference for religion over irreligion." *Id.* at 684 n.3.

The Tri-County monument is constitutional under *Van Orden*. "There is an unbroken history of official acknowledgement by all three branches of government of the role of religion in American life from at least 1789." *Id.* at 686 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984)). The Court recognized, "'religion has been closely identified with our history and government,'" and that "'[t]he history of man is inseparable from the history of religion.'" *Id.* at 687 (modification in original) (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 212 (1963); *Engel v. Vitale*, 370 U.S. 421, 434 (1962)). Accordingly, "[s]imply having a religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Id.* at 690 (citing cases).

The *Van Orden* Court made specific reference to the importance the Ten Commandments has played in the Nation's history. "Our opinions, like our building, have recognized the role the Decalogue plays in America's heritage." *Id.* at 689. "[A]cknowledgements of the role played by the Ten Commandments in our Nation's heritage are common throughout America. We need only

look within our own courtroom." *Id.* at 688 (detailing numerous depictions of the Ten Commandments in and on Supreme Court building). "**[T]he Ten Commandments have an undeniable historical meaning**." *Id.* at 690 (emphasis added). Accordingly, Ten Commandments monuments have "dual significance, partaking of both religion and government." *Id.* at 691-92.

The monument at issue in *Van Orden* was one of several monuments "commemorating the 'people, ideals, and events that compose Texan identity.'" *Id.* at 681. Likewise, the Tri-County monument is one of several monuments in the Forum, and its acceptance into the Forum was conditioned on the Ten Commandments' having "a significant role in the development, origins or foundations of American or Florida law, or Levy County." (Dep.Ex.A, §1.1.) Thus, the Tri-County monument represents the same dual significance observed in *Van Orden*, and therefore does not violate the Establishment Clause.

The Complaint includes generic *Lemon* Test allegations, that the challenged monument advances religion, constitutes government endorsement of religion, and fosters excessive entanglement with religion. (Compl., ¶¶19-21.) According to the Supreme Court, however, Plaintiffs' invocation of the *Lemon* Test misses the mark:

> Whatever may be the fate of the *Lemon* test in the larger scheme of Establishment Clause jurisprudence, **we think it not useful in dealing with the sort of passive monument that Texas has erected on its Capital grounds**. Instead, our analysis is driven both by the nature of the monument and by our Nation's history.

*Van Orden*, 545 U.S at 686 (emphasis added). The County is entitled to judgment on Plaintiffs' Establishment Clause claim.

### C.   Plaintiffs' Equal Protection Claim Fails Because Plaintiffs Are Not Similarly Situated.

Plaintiffs' claim under the Equal Protection Clause fares no better because Plaintiffs did not receive disparate treatment by the County. The Equal Protection Clause of the Fourteenth

Amendment makes it unconstitutional for any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. "The concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the government action questioned or challenged." *Reynolds v. Sims*, 377 U.S. 533, 565 (1964). "[T]he Equal Protection Clause requires government entities to treat **similarly situated** people alike." *Campbell v. Rainbow City*, 434 F.3d 1206, 1213 (11th Cir. 2006) (emphasis added). To prevail on their equal protection claim, "Plaintiffs must show that (1) they were treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral [policy] for the purpose of discriminating against Plaintiffs." *Id.* at 1314.

Plaintiffs cannot prevail. As shown herein, the County granted the Tri-County application because its proposed monument complied with the Guidelines, and denied Plaintiffs' applications because their proposed monument did not. (County 34:13-22; Dep.Ex.I; Dep.Ex.N; Dep.Ex.O; Dep.Ex.3.) "Different treatment of dissimilarly situated persons does not violate the Equal Protection Clause." *Strickland v. Alderman*, 74 F.3d 260, 265 (11th Cir. 1996). "A local government does not violate the Equal Protection Clause by granting a permit to an applicant who has a nonfrivolous claim of entitlement under the pertinent legislation and by denying a permit to another applicant who is clearly unentitled to it. **The two applicants are not similarly situated**." *E&T Realty v. Strickland*, 830 F.2d 1107, 1112 (11th Cir. 1996) (emphasis added). Plaintiffs are not similarly situated to Tri-County Pregnancy Center, and Plaintiffs have no Equal Protection Claim.

Plaintiffs' Amended Application, however, suggests they may argue that requiring them to comply with the entirety of text provisions of the Guidelines is discriminatory because Tri-County Pregnancy Center was not required to include the entire text of the Ten Commandments as printed

in the Book of Exodus of the King James Bible. (Dep.Ex.5, at 7.) The Court should reject this argument.

In its review of the Tri-County monument, the County recognized the unique place of the Ten Commandments in American history and law, and that there is no definitive version. (County 60:15-63:20, 76:10-80:2, 81:6-82:10, 84:16-86:21, 89:9-14, 125:2-126:3, 174:5-20.) Based on Supreme Court and other research, County Attorney Brown concluded that the Tri-County application depicted both the complete text of a recognized version of the Ten Commandments, and the entirety of the Ten Commandments as an "item"—*i.e.*, the stone tablets. (*Id.*) Brown's research is verifiably correct.

The monument at issue in *Van Orden* contains a version of the Ten Commandments substantially similar to the Tri-County monument's, and in his dissent, Justice Stevens refers to it as "**the full text of one version of the Ten Commandments**." 545 U.S. at 707 (Stevens, J., dissenting) (emphasis added). (*Cf.* Dep.Ex.B.) The plurality simply described the version as "the text of the Ten Commandments." *Id.* at 681. Writing in an earlier *Summum* case, the Utah district judge explained,

> **Several versions of the Ten Commandments, also known as the Decalogue, exist, and indeed at least two versions are found in the Pentateuch of the Bible itself. Other versions are found elsewhere. To the extent that the Decalogue serves as a religious symbol, various religions recognize different versions and arrangements** of the Decalogue.
>
> . . . . [N]o specific religious group or religious text is identified with the "Ten Commandments" and **the version of the "Ten Commandments" on the monument is but a symbol. The versions, while distinct in their presentation, rationale and numbering, are similar with regard to general content.** The commandments are basic policy statements and general principles, involving both one's relationship to God and one's relationship to family and neighbors. The varying texts and rationale used to articulate the "Ten Commandments" and its location in the Pentateuch serve to illustrate the secular nature of the "Ten

> Commandments," the considerable influence other older codes had
> on it, and its influence on western legal systems.

*Summum v. City of Ogden*, 152 F. Supp. 2d 1286, 1295–96 (D. Utah 2001) (footnotes omitted) (emphasis added), *aff'd in part, rev'd in part,* 297 F.3d 995 (10th Cir. 2002).

A version of the Ten Commandments text nearly identical to the Tri-County version was on the monument at issue in *Glassroth*, which also embodied the symbolic depiction of two stone tablets, leading to this description by the district judge: "The top of the monument is carved as two tablets with rounded tops, **the common depiction of the Ten Commandments**; these tablets slope toward a person viewing the monument from the front." *Glassroth v. Moore*, 229 F. Supp. 2d 1290, 1294 (M.D. Ala. 2002) (emphasis added).

Thus, whether viewed as a document, in which case there is no definitive version of the text, and multiple similar versions are commonly accepted as the "Ten Commandments," or whether viewed as an "item"—*i.e.*, a symbol of the stone tablets containing a version of the text— in which case it is commonly accepted in its entirety as the "Ten Commandments," the County properly applied the entirety of text or item provisions of the Guidelines, as written, in approving the Tri-County monument. Tri-County never purported to quote the Book of Exodus, like Plaintiffs purport to quote other specific writings. The County was not required to treat Tri-County's monument as an incomplete quote from a biblical text.

It cannot be said about **any** text proposed in Plaintiffs' applications that several versions are recognized, or even that several versions exist, or that the text is part of a recognized symbol. For each text, a single, verifiable version exists, and none of the excerpts have acquired the unique identity of the Ten Commandments in history, law, and culture, such that the excerpt stands alone as a complete text or symbol. To be sure, the County likely would have approved a monument to the First Amendment, one of the proposed texts in Plaintiffs' Amended Application, even though

it is but a subdivision of the Constitution (or Bill of Rights), given the First Amendment's contemporary acceptance as a stand-alone entity. (Dep.Ex.O.). Accordingly, the County's rejection of Plaintiffs' proposed texts under the entirety of text or item provisions of the Guidelines was in no way discriminatory, and Plaintiffs cannot claim disparate treatment for purposes of an Equal Protection claim.

## CONCLUSION

For these reasons, the Court should grant the County's Motion for Summary Judgment.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver (Fla. 701092)
Horatio G. Mihet (Fla. 26581)
Roger K. Gannam (Fla. 240450)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776 Telephone
407-875-0770 Facsimile
court@LC.org
hmihet@LC.org
rgannam@LC.org

Donovan A. Roper (Fla. 858544)
ROPER & ROPER, P.A.
116 North Park Avenue
Apopka, FL32703
407-884-9944 Telephone
407-884-4343 Facsimile
email@roperandroper.com

Attorneys for Defendant

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I HEREBY CERTIFY that this memorandum complies with the word limit requirements

of Local Rule 7.1(F), as adjusted by the Court's Order (ECF No. 46).

/s/ Roger K. Gannam
Roger K. Gannam,
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically

with the Court on June 27, 2017. Service will be effectuated by the Court's electronic notification

system upon all counsel or parties of record.

/s/ Roger K. Gannam
Roger K. Gannam,
Attorney for Defendant