**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **AMERICAN ATHEISTS, INC., et al.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **1:15-cv-00113-MW-GRJ** |
| | : | |
| **v.** | : | **JUDGE MARK E. WALKER** |
| | : | |
| **LEVY COUNTY,** | : | **MAGISTRATE JUDGE** |
| | : | **GARY R. JONES** |
| **Defendant.** | : | |
| | : | **ORAL ARGUMENT REQUESTED** |

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT LEVY COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Mathew D. Staver (Fla. 701092)
Horatio G. Mihet (Fla. 26581)
Roger K. Gannam (Fla. 240450)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776 Telephone
407-875-0770 Facsimile
court@LC.org
hmihet@LC.org
rgannam@LC.org

Donovan A. Roper (Fla. 858544)
ROPER & ROPER, P.A.
116 North Park Avenue
Apopka, FL 32703
407-884-9944 Telephone
407-884-4343 Facsimile
email@roperandroper.com

Attorneys for Defendant,
Levy County

## PRELIMINARY STATEMENT

Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Memorandum of Law in Support of Defendant Levy County's Motion for Summary Judgment (ECF No. 48, "Memorandum in Support"). Plaintiffs' "Opposition" as used herein refers to the Memorandum of Law in Support of Plaintiffs' Response to Defendant Levy County's Motion for Summary Judgment (ECF No. 61).

## INTRODUCTION

Plaintiffs do not seriously engage the law or the record in their Opposition. Plaintiffs try to obscure the legal deficiencies of their claims, and insurmountable record evidence against them, with the filing of additional deposition transcripts (ECF No. 59), and citations to the unproved—and *dis*proved—allegations of their Complaint (Opp'n at 6, 12-18, 22, 23, 28). The result is quibbling arguments on immaterial matters, and a complete failure to show a genuine dispute as to any material fact which could overcome summary judgment. The Court has given Plaintiffs ample opportunity to substantiate, with evidence, their allegations against the County. In the end, however, Plaintiffs' claims are as factually vacant now as they were at the beginning. The County's Motion for Summary Judgment should be granted.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION FAILS TO RAISE ANY ISSUE OF MATERIAL FACT TO OVERCOME SUMMARY JUDGMENT.**

A. **Plaintiffs Misrepresent the Record by Citing Disproved Complaint Allegations Instead of Record Evidence.**

Rather than cite to record evidence to oppose the County's motion, as required by Rule 56, Plaintiffs improperly and repeatedly cite the unproved and even disproved allegations of their own Complaint to support their claims. (Opp'n at 4-8, 10, 17-20, 25, 28-31.) "In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him."

*Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Moreover, by asserting disproved Complaint allegations as true, Plaintiffs misrepresent the record to the Court, and fatally undermine the credibility of the entire Opposition.

For example, three times in their Opposition Plaintiffs aver falsely that the Ten Commandments monument is "prominently displayed in front of the Levy County Courthouse." (Opp'n at 4, 7, 8.) Each time, Plaintiffs cite to their Complaint. (*Id.*) This falsehood is laid bare, however, by the unrefuted record evidence establishing that the monument is nowhere near the front of the courthouse, is 208 feet from the only public entrance, is not visible from that entrance, and is not visible from either of the two main roads going through Bronson, the County Seat. (Mem. Supp. at 8.) Even if Plaintiffs' were merely negligent in misrepresenting the location of the monument in their Complaint, Plaintiffs' continuing to advance the falsehood after discovery, and in the face of the County's sworn Declaration of Jim Jones in Support of Motion for Summary Judgment (ECF No. 51), is constitutes misrepresentation beyond mere negligence.[1]

Another and more troubling example of Plaintiffs' misrepresentation is their continued and repeated false averment in their Opposition, citing exclusively to the Complaint, that the County conducted a religious prayer ceremony to "unveil" the Ten Commandments monument. (Opp'n at 7-8 ("The Levy County Board of County Commissioners unveiled the Display through a religious ceremony including prayers and invocations . . . ."); 25-26 ("Those injuries can be traced directly to the Defendant's conduct in erecting the Ten Commandments Display, endorsing it with a religious prayer ritual upon its dedication . . . ."); 28 ("The Defendant unveiled the Display through

---

[1]     Plaintiffs even allege in the Complaint that the Ten Commandments monument is "on the Courthouse steps." (ECF No. 1, ¶ 29.) It is difficult to imagine how Plaintiffs, with so little knowledge about where the Ten Commandments monument **is**, could plausibly claim a constitutional injury from **seeing** it.

a government endorsed religious ceremony including prayers and invocations . . . .").) This repeated misrepresentation is more troubling because it contradicts Plaintiffs' own record admissions that **they have no knowledge or evidence** of such an "unveiling" or "religious ceremony" (Mem. Supp. at 7), which again excludes negligence as the cause of the misrepresentation. The falsehood is also abusive to these proceedings because the Court based its denial of the County's motion to dismiss, in part, on the Plaintiffs' allegation that such a ceremony occurred. (Order Den. Mot. Dismiss, ECF No. 19, at 10 ("It is enough that it alleges that the County approved the placement of a large Ten Commandments monument in the courtyard of the Levy County courthouse **and the Board unveiled the monument through a religious ceremony which included prayers**." (emphasis added)).) Given that Plaintiffs had no knowledge or evidence of such a ceremony by the time their depositions were taken, they necessarily had no knowledge or evidence of such a ceremony when they alleged it in their Complaint.

### B. Plaintiffs Fail to Address the County's Legal Arguments or Raise Any Issue of Material Fact to Overcome Their Lack of Standing.

The County has presented the Court with substantial legal authority and record evidence showing Plaintiffs have no standing to bring either the Establishment Clause or Equal Protection claims they assert. (Mem. Supp. at 15-23.) To summarize, Sparrow, and by extension American Atheists, has no Establishment Clause injury; and neither has standing, directly or derivatively, to assert an Equal Protection claim for denial of an otherwise utterly defective monument application. (*Id.*) In response, Plaintiffs cite no law beyond elementary standing principles, and cite no record evidence.[2] (Opp'n at 24-27.) The Court need go no further. The County is entitled to summary judgment on Plaintiffs' lack of standing.

_____

[2]     Plaintiffs assert for the first time in their Opposition, and contrary to the express allegations of their Complaint, that American Atheists "is suing directly, in its own right, for the injury it

**C.      Plaintiffs' Entire Argument on the Dispositive Forum Issue Is the Patently False and Now-Abandoned Statement That "Discovery Is Ongoing."**

As shown by the County, the Forum's status as a limited public forum is fatal to Plaintiffs' Establishment Clause claim. (Mem. Supp. at 24-27.) The entirety of Plaintiffs' argument in response is as follows:

> [T]he legal status of the forum created by the Defendant in this case has not been established, and cannot be established by Defendant's mere assertion. Discovery is ongoing, and the facts discovered will determine the nature of the forum Defendant established.

(Opp'n at 5.) In their opposition to the County's motion for leave to file this reply, Plaintiffs disavowed, as a "typographical or scrivener's error," their patently false assertion that "[d]iscovery is ongoing." (ECF No. 63 ¶ 8.) Whereas Plaintiffs' argument was already woefully deficient, Plaintiffs' subsequent disavowal of its only argument on the forum issue effectively concedes the point. *See Dunmar*, 43 F.3d at 599 ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . [T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") The County is entitled to summary judgment on the forum issue, and therefore on the merits of Plaintiffs' Establishment Clause claim.

**D.      The Personal Religious Beliefs of Some County Officials Do Not Create a Genuine Issue of Material Fact on the Dispositive Establishment Clause Issue of Secular Purpose.**

The County has shown the objective neutrality of the Guidelines and the County's approval of the Tri-County Ten Commandments monument thereunder. (Mem. Supp. at 2-8, 28-29.). Thus,

---

suffered in having been denied application for a monument." (Opp. at 26; *cf* Compl., ECF No. 1, ¶ 7 ("American Atheists brings this action to assert the First Amendment rights of its members.")). As shown in the County's Memorandum, however, American Atheists, with no legal presence in Levy County whatsoever, has never been legally eligible to apply to place a monument in Levy County under the Guidelines. (Mem. Supp., ECF No. 48, at 22-23.)

even if the monument were government speech, which it is not, it would in no way violate the Establishment Clause. In their effort to transform this reality into an unconstitutional establishment of religion, Plaintiffs overplay their hand.

Adding to the made-up government religious ceremony which Plaintiffs repeatedly foist upon the Court as fact (*see supra* Part I.A), Plaintiffs push the narrative that, "[b]y virtue of its preferential treatment and installation in furtherance of the personal religious beliefs of the Defendant's County Commissioners, The Ten Commandments Display constitutes a government endorsement of a particular religion." (Opp'n at 18.) Not only do Plaintiffs fail to cite record evidence of "the personal religious beliefs" of any Commissioner who approved Tri-County's application to place the Ten Commandments monument, such beliefs, even if supported by the record, are immaterial as a matter of law.

In determining, under the Establishment Clause, the legislative purpose of an act of the government—*i.e.*, whether secular or religious—the personal beliefs of legislators are irrelevant. *See Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990). As the Supreme Court held in *Mergens*,

> Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because **what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law**. Because the Act on its face grants equal access to both secular and religious speech, we think it clear that the Act's purpose was not to endorse or disapprove of religion . . . .

496 U.S. at 249 (bold emphasis added) (internal quotation marks omitted). Drawing on *Mergens*, a Utah district court further explained,

> [T]he secular purpose inquiry does not probe the personal motives of those involved in passing a statute or ordinance. Personal motives are immaterial because, as stated in *Board of Education v. Mergens,* "what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law." As Justice O'Connor explained in *Wallace v. Jaffree,* in evaluating

the secular purpose of legislation, "**a court has no license to psychoanalyze the legislators" in order to ferret out improper subjective intent**.

*Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1237 (D. Utah 2004) (emphasis added) (citations omitted), *aff'd*, 425 F.3d 1249 (10th Cir. 2005). "It is particularly troublesome to denigrate an expressed secular purpose due to postenactment testimony by particular legislators or by interested persons who witnessed the drafting of the statute." *Wallace v. Jaffree*, 472 U.S. 38, 74–75 (1985) (O'Connor, J., concurring). Thus, in light of the facial secular purposes of the Guidelines and approval of the Ten Commandments monument pursuant thereto, the "personal religious beliefs" of "particular legislators" are irrelevant.

In any event, none of the County officials whose religious beliefs are cited by Plaintiffs was a Commissioner who enacted the Guidelines or approved the Tri-County application. Fred Moody was the County Coordinator, not a County Commissioner. (Opp'n at 15.) As such, Moody did not have authority to approve or deny the Tri-County application. (ECF No. 59-1 at 84:8-13.) Furthermore, to the extent Moody had any personal religious beliefs regarding the Ten Commandments (Opp'n at 15), he never communicated such beliefs to the County Commissioners who ultimately approved the application. (ECF No. 59-1 at 31:11-35:22.) County Commissioner Joyner, whatever his personal religious beliefs (Opp'n at 17), did not become a Commissioner until after the Tri-County application was approved under the Guidelines, and otherwise had no involvement with the monument. (ECF No. 59-4 at 5:8-6:17.) Thus, in arguing to the Court that the Ten Commandments monument was approved "in furtherance of the personal religious beliefs of the Defendant's County Commissioners," Plaintiffs fail to cite record evidence of even one County Commissioner who approved the monument application. To be sure, Plaintiffs point to no record evidence whatsoever to support their Establishment Clause claim, and the County is entitled to summary judgment.

6

E.      **Plaintiffs Fail to Raise Any Genuine Issue of Material Fact on the Dispositive Equal Protection Issue of Disparate Treatment.**

The County anticipated, and refuted, Plaintiffs' disparate treatment arguments based on the County's comprehending the unique historical-legal character of the Ten Commandments as both a text and an "item" under the Guidelines. (Mem. Supp. at 29-33; Opp'n at 11-17.) In addition to their failed arguments regarding the text of the Ten Commandments, Plaintiffs devote much of their Opposition to quibbling arguments over immaterial aspects of the County's approval of the Tri-County application, in an obvious effort to distract the Court from the myriad deficiencies with Plaintiffs' monument applications. (Mem. Supp. at 8-13.) But Plaintiffs' attempts to find constitutional fault with the County's approval of the Tri-County application fall far short.

For example, Plaintiffs' argument that disparate treatment is evidenced by a change to the proposed Ten Commandments monument which was effected during the time between submission and approval of the application—a change of one sentence from a religious admonition, "LOVE GOD AND KEEP HIS COMMANDMENTS," to a mere description, "THE TEN COMMANDMENTS"—is wholly unconvincing. (Opp'n at 12-13 ("The inscription on the Display in the [application] photograph is different from the actual inscription on the erected monument."); *compare* ECF No. 59-23 at 8 of 9, *with* ECF No. 51-3.) First, it is beyond dispute that the change made the approved monument more secular, not more religious. The absence of record evidence as to the precise change process does not even justify an inference, let alone create a genuine issue of material fact, as to preferential treatment for religion over nonreligion. Second, there is no record evidence that either of Plaintiffs' proposed monuments could have been approved under the Guidelines with the mere change of one sentence. To be sure, the record evidence proves myriad problems with both of Plaintiffs' proposed monuments under the Guidelines. (Mem. Supp. at 8-13.) Thus, however the one-sentence change to the proposed Ten

Commandments monument was effected prior to its approval, Plaintiffs fail to create any genuine issue of material fact as to whether Plaintiffs, hypothetically, could have been allowed the same opportunity to effect a minor change to get either of their proposed monuments across the approval threshold. None of Plaintiffs other arguments regarding disparate treatment are any more convincing, and the County is entitled to summary judgment on Plaintiffs' Equal Protection claim.

## CONCLUSION

For all the reasons in this reply memorandum, and for the reasons stated in the County's initial Memorandum in Support, the Court should grant the County's Motion for Summary Judgment.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver (Fla. 701092)
Horatio G. Mihet (Fla. 26581)
Roger K. Gannam (Fla. 240450)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776 Telephone
407-875-0770 Facsimile
court@LC.org
hmihet@LC.org
rgannam@LC.org

Donovan A. Roper (Fla. 858544)
ROPER & ROPER, P.A.
116 North Park Avenue
Apopka, FL32703
407-884-9944 Telephone
407-884-4343 Facsimile
email@roperandroper.com

Attorneys for Defendant, Levy County

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Court on September 15, 2017. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Roger K. Gannam
Roger K. Gannam,
Attorney for Defendant