# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

AMERICAN ATHEISTS, INC.,
and CHARLES R. SPARROW,

        *Plaintiffs*,

v.                                  Case No. 1:15cv113-MW/GRJ

LEVY COUNTY,

        *Defendant.*

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case involves claims under the Establishment Clause and the Equal Protection Clause of the United States Constitution. Specifically, Plaintiffs challenge the presence of a religious monument on government property and the denial of their application to place a secular monument in the same location. However, Plaintiffs lack standing to bring their claims. Accordingly, Defendant's motion for summary judgment, ECF No. 47, is **GRANTED**.

## I. *Facts*[1]

Defendant, Levy County, has its seat of government in Bronson, Florida. Many of Levy County's government offices are located in a single complex in downtown Bronson. Specifically, the complex houses the Levy County Courthouse in addition to offices for the Board of County Commissioners, the Clerk of Court, the Property Appraiser, and the Tax Collector. ECF No. 49-1, at 169. Furthermore, the complex is flanked by the Supervisor of Elections' offices on one side and an administrative building that houses the State Attorney and Public Defender's offices on the other. An aerial photograph of the property is provided below:



---

[1] Because this Court is ruling on Defendant's motion for summary judgment, it "view[s] all evidence and draw[s] all reasonable inferences in favor of" Plaintiffs. *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010).

[2] This photograph was taken from Google Maps, a website that "is so well known and enjoys such broad use that it may have achieved a status akin

Sometime around 1996, a group of donors erected a veterans' memorial in the courtyard between the Levy County complex and the adjacent administrative building. ECF No. 48, at 7. The memorial bears a number of military seals and a block of text stating "IN MEMORY OF THOSE WHO SERVED OUR COUNTRY IN ALL WARS." *Id.* A flagpole was placed next to the memorial sometime later. *Id.* A picture of the memorial and flagpole, as they stood in June 2009, can be seen below:



ECF No. 51-1.

---

to Webster's Dictionary, permitting judicial notice of the accuracy of the site itself." Jeffrey Bellin & Andrew G. Ferguson, *Trial By Google: Judicial Notice in the Information Age*, 108 Nw. U. L. Rev. 1137, 1176 (2014). Like other courts, this Court takes judicial notice of the information displayed on Google Maps. *Cf. United States v. Perea-Rey*, 680 F.3d 1179, 1182 at n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the general location of the home." (quoting Fed. R. Evid. 201(b))).

Sometime in 2008 or 2009, a member of the public inquired with Levy County officials about placing a monument to the Ten Commandments[3] in the same courtyard as the veterans' memorial. ECF No. 48, at 7. After researching the legality of such a placement, the Levy County Attorney concluded that the county "should adopt neutral guidelines to govern the placement of private monuments on County property." *Id.* at 8. Guidelines were eventually developed, and the Levy County Board of County Commissioners ("BOCC") approved them in a vote. *Id.*

The first application under the new guidelines came from Tri-County Pregnancy Center, Inc., ("Tri-County")[4] in November 2009. *Id.* at 11. Tri-County's application was for a six-foot tall, five-foot wide "display of the Ten Commandments." ECF No. 50-23, at 1–2. The BOCC approved Tri-County's application, and the

---

[3] "The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths . . . ." *Stone v. Graham*, 449 U.S. 39, 41 (1980). "For many followers, the Commandments represent the literal word of God as spoken to Moses and repeated to his followers after descending from Mount Sinai." *Van Orden v. Perry*, 545 U.S. 677, 716 (2005) (Stevens, J., dissenting).

[4] Tri-County describes itself as "an outreach ministry of JESUS CHRIST." Tri-County Pregnancy Ctr., *About Us*, tcpfl.org, http://www.tcpcfl.org/index.php?option=com_content&view=article&id=27 &Itemid=54 [https://perma.cc/3U2C-GYJD].

monument ("Monument") was placed in the courtyard next to the flagpole.[5] ECF No. 48, at 11–13.

The veteran's memorial, flagpole, and Monument can be seen in the following picture (from left to right):



ECF No. 51-3.

---

[5] The parties disagree about how the Monument was unveiled. Plaintiffs allege that "[t]he Levy County Board of County Commissioners unveiled the [Monument] through a religious ceremony including prayers and invocations." ECF No. 1, at 4. Levy County denies that allegation. ECF No. 20, at 3. Although the nature of the Monument's unveiling may be critical for resolving the merits of Plaintiffs' claims, it is not material for purposes of this Court's analysis of standing. Accordingly, the parties' factual dispute does not preclude summary judgment. Nevertheless, there is reason to believe that the Monument *was* unveiled through a religious ceremony. Specifically, an article from a Levy County news source states that the Monument was "blesse[d] and dedicate[d] by "Rev. Carl Carnegie." *See* The Staff, *Ten Commandments Dedicated*, Chiefland Citizen (Feb. 12, 2010), http://www.chieflandcitizen.com/content/ten-commandments-dedicated [https://perma.cc/XYV5-ERWP]. The article includes a picture of the supposed dedication, apparently depicting the "wife of [a] Levy County Commissioner" holding her umbrella over Rev. Carnegie as it rained. *Id.*

In January 2014, Plaintiff Charles Sparrow applied to place a monument in the courtyard on behalf of Williston Atheists.[6] ECF No. 50-1. The monument in question was a "[g]ranite bench dedicated to citizens of Levy County who are non-believers and who are not represented by the Ten Commandments monument." *Id.* at 1. The Levy County Attorney prepared a staff report noting that Sparrow's application failed to comply with the county's monument-placement guidelines. ECF No. 48, at 15. The BOCC later denied the application. *Id.* at 16.

In March 2014, Sparrow submitted an "appeal and amended monument placement application." ECF No. 50-5. This time the application was filed on behalf of both Williston Atheists and Plaintiff American Atheists, Inc. ("American Atheists").[7] *Id.* at 1. Once again, the Levy County Attorney prepared a staff report noting defects in the application. ECF No. 48, at 16–18. And the BOCC once again denied the application. *Id.* at 18. Subsequently, Plaintiffs filed this lawsuit. ECF No. 1.

---

[6] Williston Atheists is an unincorporated "group of atheists" that meets to "share information about what's going on in . . . the secular community." ECF No. 49-3, at 16–25.

[7] American Atheists is "a membership organization dedicated to advancing and preserving the complete separation of church and state." ECF No. 1, at 3.

## II. *Plaintiffs' Claims*

Plaintiffs' complaint is no paragon of clarity. *See* ECF No. 1. Despite Plaintiffs' failure to enumerate a single count, this Court discerns two claims from the complaint. First, Plaintiffs claim that the presence of the Monument in the Levy County courtyard violates the Establishment Clause of the First Amendment to the United States Constitution. *See id.* at 5. Second, Plaintiffs claim that Levy County's denial of Plaintiffs' appeal and amended monument placement application violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[8] *See id.* at 6. For both of these violations, Plaintiffs seek declaratory relief, injunctive relief, and nominal damages. *See id.* at 5–7.

---

[8] Plaintiffs' claims are also based on the Florida Constitution. *See* ECF No. 1. But "the Florida Constitution's Establishment Clause is duplicative in many respects of the Federal Constitution's Establishment Clause." *Atheists of Fla., Inc. v. City of Lakeland*, 779 F. Supp. 2d 1330, 1341 (M.D. Fla. 2011). Similarly, "[a]lthough federal cases are not controlling as to whether Florida's Equal Protection Clause is violated, they are 'relevant and persuasive.'" *Club Car Rentals of Gainesville, Inc. v. City of Gainesville*, No. GCA 85-0177-MMP, 1988 WL 294258, at *3 n.2 (N.D. Fla. May 6, 1988) (quoting *Osterndorf v. Turner*, 426 So. 2d 539, 543 (Fla. 1982)). Neither party has argued that the standing analysis should be any different under the Florida Constitution, and this Court concludes there is no difference.

## A. *The Establishment Clause Claim*

Before this Court can consider the merits of Plaintiffs' claim, this Court must first determine whether Plaintiffs have standing. Standing is the "irreducible constitutional minimum" necessary to make a justiciable "case" or "controversy" under Article III, Section 2, of the United States Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). To have standing, a plaintiff must prove that (1) he suffered an "injury in fact," (2) the injury is causally connected to the defendant's conduct, and (3) the injury is "likely" to be "redressed by a favorable decision" of the court. *Id.* at 560–61. This Court finds that Plaintiffs have failed to meet the injury-in-fact requirement because Mr. Sparrow is unlikely to encounter the Monument in the future and because his only encounter with the Monument in the past was during a purposeful visit.

### 1. *Sparrow's Future Injury*

Courts have struggled with deciding what types of injuries are sufficient to confer standing upon persons aggrieved by religious displays. *See Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987) ("[T]he concept of injury for standing purposes is particularly elusive in Establishment Clause cases."). The Supreme Court has cautioned that, although "standing may

be predicated on noneconomic injury," it is not enough for a plaintiff to merely allege the "psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–87 (1982). Consequently, courts usually require that a plaintiff have "direct and unwelcome personal contact" with a religious display. *See Freedom From Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) ("Nearly every court of appeals has held that standing in this context 'requires only direct and unwelcome personal contact with the alleged establishment of religion.'"); *see also Saladin*, 812 F.2d at 693 ("[A] non-economic injury which results from a party's being subjected to unwelcome religious statements can support a standing claim, so long as the parties are 'directly affected by the laws and practices against whom their complaints are directed.'" (quoting *Sch. Dist. v Schempp*, 374 U.S. 203, 224 n.9 (1963))).

In his deposition, Mr. Sparrow stated unequivocally that he does not "have any requirements in the foreseeable future that would require [him] to go [to the Levy County complex]." ECF No. 49-3, at 43. The record does not even support an inference that

Sparrow *might* have to go to the complex. At the time of Sparrow's deposition (August 10, 2016), Sparrow had not visited the complex in over two years.[9] *Id.* at 37. The only reason he had visited two years prior was to attend a BOCC hearing about the denial of his monument-placement application. *Id.* at 38. Sparrow cannot even remember when he visited the complex before then. *Id.*

To be fair, Sparrow does remember doing certain things at the complex. For instance, he has been "to get tags, registration, collect brochures for hunting and fishing information," "to renew a disabled parking permit," and to pay a traffic ticket.[10] *Id.* at 38, 46. But Sparrow readily admits that he does not expect to conduct such activities again in the future. That is, he stopped going in person to renew his car tag and registration because he now does it "by mail." *Id.* at 40. There is no indication that he will need to collect more brochures. *See id.* at 38–41. He has no need to renew his disabled parking permit because "the condition that required [him] to have a disabled permit . . . corrected itself." *Id.* at 39. And

---

[9] Nothing in the record suggests that Sparrow stopped going to the Levy County complex *because* of the Monument.

[10] At his deposition, Sparrow was asked twice if there are other things that brought him to the Levy County complex within the previous five years, and he did not identify any additional activities. ECF No. 49-3, at 41–42.

he does not anticipate getting any more traffic tickets. *See id.* at 47.

Of course, it is entirely *possible* that Sparrow might return to the Levy County complex.[11] But mere possibility is not enough. To have an injury in fact, a plaintiff must show that his alleged harm is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). The record before this Court barely provides for the inference that Sparrow could hypothetically visit the complex, let alone that he will do so imminently. Sparrow's failure to provide evidence indicating a future visit to the complex is fatal to his claims for prospective relief. *See Wooden v. Bd. of Regents*, 247 F.3d 1262, 1283 (11th Cir. 2001) ("[T]o have standing to obtain forward-looking relief, a

---

[11] Quite frankly, this Court is baffled by Plaintiffs' counsel's failure to develop the record in this regard. Sparrow could have easily established standing by stating that he intends to return to the complex (e.g., to attend BOCC hearings, to look up property records, to observe court proceedings). Counsel's failure to develop these facts is certainly not for lack of opportunity. *See* ECF No. 27 (extending discovery period); ECF No. 31 (extending discovery period); ECF No. 35 (extending discovery period); ECF No. 38 (extending pretrial deadlines); ECF No. 40 (extending pretrial deadlines); ECF No. 53 (extending time to respond to motion for summary judgment and explaining that "this Court wants a fully developed record and fully develop[ed] arguments."); ECF No. 56 (extending time to respond to motion for summary judgment); ECF No. 58 (extending time to respond to motion for summary judgment).

plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."); *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1254–55 (10th Cir. 2017) (holding that plaintiff lacked standing for prospective relief in Establishment Clause case because any future injury to the plaintiff was not "certainly impending").

## 2. *Mr. Sparrow's Past Injury*

Unlike a claim for prospective relief, a claim for retrospective relief can be based solely on past injuries. *See, e.g.*, *New Kensington*, 832 F.3d at 478 n.7 ("The risk of future contact is only relevant to the question of whether there is standing to seek injunctive and declaratory relief, and it does not factor into our analysis of whether there is standing to pursue nominal damages."). Here, Plaintiffs seek retrospective relief in the form of a declaratory judgment and nominal damages. ECF No. 1, at 5, 7. So, as long as Mr. Sparrow can prove that he had direct and unwelcome personal contact with the Monument at least once in the past, Plaintiffs should (in theory)[12] have standing. *Cf. United*

---

[12] Several courts have allowed Establishment Clause cases to proceed even when the only viable claim is one for nominal damages based on past injuries. *See, e.g.*, *Douglas Cty.*, 859 F.3d at 1253–54. But the Eleventh Circuit has recently cast a dark shadow over plaintiffs who want to raise claims for nominal damages. *See Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*,

*States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing to fight out a question of principle . . . ." (quotation omitted)).

Despite being a relatively low hurdle to clear, Sparrow has failed to satisfy the "direct and unwelcome personal contact" standard. Sparrow knows he has seen the Monument, but he does not remember when that was. ECF No. 49-3, at 42–43. Nor does Sparrow remember why he was at the Levy County complex when he saw the Monument. *Id.* at 43. In fact, Sparrow admitted that he might have gone to the complex for the specific purpose of seeing the Monument. *Id.*

---

868 F.3d 1248 (11th Cir. 2017) (en banc). To be clear, the circumstances of *Flanigan's* are distinguishable from this case. But some of the majority opinion's statements give this Court pause. For instance, the majority opinion opens with the statement that "a prayer for nominal damages, by itself, is insufficient to satisfy Article III's jurisdictional requirements." *Id.* at 1253. This statement would seem to preclude Mr. Sparrow from pursuing his nominal damages claim given that he does not have standing to seek other relief. But, as the dissent in *Flanigan's* notes, "[t]he majority's holding is, at best, undermined and, at worst, contradicted by its footnotes." *Id.* at 1272. (Wilson, J., dissenting, joined by Martin, Jordan, Rosenbaum, and Jill Pryor, JJ.). Indeed, despite the above-quoted opening statement, the majority later states that its holding "does not foreclose the exercise of jurisdiction in all cases where a plaintiff claims only nominal damages." *Id.* at 1263, n. 12. Whatever the holding may be, this Court need not make meaning of these inconsistencies because there is an alternative ground to deny standing as to Mr. Sparrow's alleged past injury.

Of course, there is no way of knowing for sure whether Sparrow purposefully visited the Monument.[13] And this Court must "draw all reasonable inferences in favor" of Plaintiffs here. *Tana*, 611 F.3d at 772. But the *only* reasonable inference that can be drawn from the undisputed facts is that Sparrow purposefully visited the Monument. Indeed, several facts in the record support this conclusion.

For instance, there's a sworn declaration from Jim Jones, the Levy County Construction & Maintenance Director, stating that the "main and only public entrance to the Levy County [complex] . . . is on the far end of the [complex] from the [Monument], approximately 208 feet away." ECF No. 51, at 2. Mr. Jones explained that the Monument "is not visible from the entrance" to the complex and that the Monument "is not readily visible" from either of the two main roads through Bronson. *Id.* Moreover, the area where the Monument is located is primarily

---

[13] To be clear, this is not a disputed issue of fact. This Court understands that if Sparrow had provided conflicting explanations of why he saw the Monument then this Court would need to hold a hearing and make a credibility determination. *Cf. ACLU of Fla., Inc. v. Dixie County*, 690 F.3d 1244, 1250 (11th Cir. 2012). But Sparrow has not offered conflicting explanations; he has only explained that he doesn't remember why he saw the Monument. ECF No. 49-3, at 42–43. Indeed, during his deposition, Sparrow repeatedly emphasized that his memory is lacking. *See, e.g., id.* at 8 ("My memory, not that it was ever that good, it's just not that good at all.").

used by state attorneys and public defenders walking between their offices and the courthouse. See ECF No. 49-1, at 21. Nothing in the record suggests that Mr. Sparrow visited, or would have reason to visit, the state attorneys' or public defenders' offices.

The Supreme Court has explained that a plaintiff's "claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal [his] discoveries in federal court." *Valley Forge*, 454 U.S. at 487. Any injury in this context would be contrived, and "[t]he Supreme Court has declined to find standing in contrived circumstances," *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705 (6th Cir. 2017) (unpublished) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013)). For this reason, courts have held that a plaintiff does not have standing to bring an Establishment Clause claim against a monument that the plaintiff purposefully encountered.[14]

---

[14] *See Am. Atheists, Inc. v. Thompson*, No. CIV-14-42-C, 2015 WL 1061137, at *1 (W.D. Okla. Mar. 10, 2015) ("Plaintiff Breeze's testimony was clear that she went out of her way to find the monument. Indeed, the location of the monument in relation to the capitol building and Plaintiff Breeze's use of that building would require her to walk around the capitol to find the monument. For this reason, assuming that she did see the monument in January of 2014, that act would not, in and of itself, establish standing . . . ."). *See also Ala. Freethought Ass'n v. Moore*, 893 F. Supp. 1522, 1535 n.26 (N.D. Ala. 1995) ("This court cannot understand how voluntary exposure to

Likewise, in this case, Mr. Sparrow does not have standing for his alleged past injury because he admitted that the only time he saw the Monument might have been during a purposeful visit and the undisputed evidence[15] suggests that the only way Mr. Sparrow could have encountered the Monument was if he purposefully visited it. Moreover, since American Atheists's

---

purportedly offensive conduct can establish standing to obtain an injunction barring such conduct. To recognize standing in such circumstances would be to allow a plaintiff to 'manufacture' her standing. Such a clever machination (or is it masochism), if recognized as legitimate, would make a mockery of the longstanding judicial interpretation of Article III's 'case or controversy' requirement."); *but cf.* Mark Eichelman, *Ringling Brothers on Trial: Circus Elephants and the Endangered Species Act*, 16 Animal L. 153, 161 (2009) ("'Manufacturing' implies a disingenuous or opportunistic creation of a situation in order to establish standing. Ultimately, this is a factual determination for the district court to make based on the plaintiff's motives and sincerity and the totality of the circumstances. While truly manufactured standing should not be allowed, the Alabama Freethought decision should not be read as an outright prohibition on voluntary exposure to potential injury. A plaintiff should not have to curtail his lawful voluntary behavior so as to avoid exposure to a defendant's unlawful behavior. To hold otherwise would limit standing to those plaintiffs who are involuntarily exposed to future injury, and no court has made such a bold assertion.").

[15] Plaintiffs do not dispute the evidence about the visibility and location of the Monument in relation to the rest of the complex. Nor do Plaintiffs dispute that the area where the Monument is located is mainly used by state attorneys and public defenders. In short, there are no credibility or factual determinations for this Court to make as to standing. Instead, this Court is simply faced with Sparrow's poor memory, Sparrow's admission that he might have purposefully visited the Monument, and undisputed facts that suggest Sparrow purposefully visited the Monument. Accordingly, the only reasonable inference to be drawn in this case is that Plaintiff purposefully visited the Monument.

standing is predicated entirely on Mr. Sparrow's activities, it too lacks standing.[16]

## B. *The Equal Protection Claim*

As with Plaintiffs' Establishment Clause claim, this Court first considers the issue of standing before addressing the merits of Plaintiffs' Equal Protection claim. And, once again, this Court concludes that Plaintiffs lack standing. But this time it's not because they failed to show an injury. Rather, Plaintiffs lack standing because they have failed to show redressability.

---

[16] An organization can assert standing in different ways. *See Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1300 (S.D. Fla. 2013) (explaining the difference between "organizational standing" and "associational standing"). American Atheists has been less than clear as to what type of standing it is asserting. *Compare* ECF No. 1, at 3 ("American Atheists brings this action to assert the First Amendment rights of its members."), *with* ECF No. 50-21, at 2 ("Plaintiffs American Atheists, Inc. and Charles Ray Sparrow are both persons with standing to sue under the applicable legal standards. Plaintiffs do not agree that they must rely on other persons or entities in order to establish standing to sue."). Either way, there is no evidence to suggest that American Atheists has organizational standing (at least not with respect to the Establishment Clause claim). Accordingly, American Atheists must demonstrate that it has associational standing, which requires it to show that "at least one of its members would have standing to bring an individual claim regarding the challenged practice." *Alumni Cruises*, 987 F. Supp. 2d at 1300. Although American Atheists may have a number of members in Levy County (indeed Mr. Sparrow's deposition testimony suggested there might be quite a few), the only member American Atheists has specifically identified and provided evidence of is Mr. Sparrow. *See* ECF No. 1; ECF No. 50-21, at 2; ECF No. 60. As such, American Atheists's standing for the Establishment Clause claim hinges entirely on whether Mr. Sparrow has standing. It is not this Court's job to develop the record and create standing for plaintiffs.

"Several federal courts, including the Eleventh Circuit, have recently concluded that a plaintiff challenging a sign ordinance cannot demonstrate redressability if the plaintiff's permit applications violate unchallenged provisions of the ordinance." *Roma Outdoor Creations, Inc. v. City of Cumming*, 599 F. Supp. 2d 1332, 1340 (N.D. Ga. 2009); *see also KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007) ("Any injury KH Outdoor actually suffered from the billboard and offsite sign prohibition is not redressible because the applications failed to meet the requirements of other statutes and regulations not challenged."). This reasoning applies here too. That is, even if this Court finds that one or more of the reasons why Plaintiffs' application was denied was unconstitutional, Plaintiffs are still without redress if there were constitutional reasons to deny their application.[17]

As outlined in the Levy County Attorney's staff report, Plaintiffs' monument-placement application suffered from several

---

[17] For example, if one of the requirements in Levy County's guidelines was that monuments can be no taller than two feet, but Plaintiffs applied for a fifty-foot tall monument, the fact that other guideline requirements were unconstitutional or had been unconstitutionally applied would be irrelevant because either way Plaintiffs' monument would fail to meet the height requirement.

deficiencies. *See* ECF No. 50-36, at 3–11. For instance, the guidelines require that monuments "include the reproduction of the entire text or image of any document or person(s)" that they portray, ECF No. 50-22, at 2, but Plaintiffs' proposed monument included several excerpts, ECF No. 50-5, at 3.[18] The guidelines also require that the texts and images included on monuments "played a significant role in the development, origins or foundations of American or Florida law, or Levy County." ECF No. 50-22, at 2. But Plaintiffs' application failed to adequately explain how each of their proposed quotes met that requirement. ECF No. 50-5.

Of course, both of the above-mentioned requirements involve a certain element of discretion. And Plaintiffs argue that Levy County applied these requirements in an unfair manner by treating Tri-County's application more favorably than Plaintiffs' application. Indeed, reasonable minds could differ as to whether the Ten Commandments meet the entire-text and significant-role requirements.

---

[18] One of Plaintiffs' proposed quotes was not even a complete sentence. ECF No. 50-5, at 3 (excerpting "As the Government of the United States of America is not, in any sense, founded on the Christian religion . . ." from the Treaty of Tripoli). Other quotes were single sentences excerpted from lengthy texts. *See id.*

But some of the requirements in the guidelines involve no discretion whatsoever. For example, the guidelines require that organizational applicants "maintain an office and provide services in Levy County," *id.* at 1, and that all applicants insure and indemnify Levy County from claims relating to their monument, *id.* at 3. Plaintiffs undeniably failed to meet these neutral requirements.[19] Moreover, Plaintiffs do not argue, and there is no evidence to suggest, that Levy County applied these neutral requirements any differently to Tri-County.[20] Plaintiffs' failure to satisfy these unchallenged (or not-reasonably-challengeable) requirements means their claim is not redressable.

To be clear, the fact that Plaintiffs don't have standing here does not mean that they can never place a monument in the Levy

---

[19] Williston Atheists is not a legally recognized entity. ECF No. 49-3, at 16–17. As such, it cannot indemnify or insure Levy County. *See, e.g.*, *I.W. Phillips & Co. v. Hall*, 128 So. 635, 637 (Fla. 1930); *Guyton v. Howard*, 525 So. 2d 948, 956 (Fla. 1st DCA 1988). Although American Atheists is incorporated in New Jersey, it is not registered to do business in Florida and there is no evidence to suggest that it provides services in Levy County. *See* ECF No. 49-1, at 151; ECF No. 50-36, at 5. Additionally, it is undisputed that American Atheists does not maintain an office in Levy County. ECF No. 49-2, at 13, 48.

[20] Indeed, Tri-County clearly satisfied the requirements. Tri-County is incorporated in Florida. ECF No. 49-1, at 42–43. Tri-County maintains an office in Levy County. *See* ECF No. 50-23, at 1. And Tri-County provides services in Levy County. *See* Tri-County Pregnancy Ctr., Services Offered, tcpfl.org, http://www.tcpcfl.org/index.php?option=com_content&view=article&id=21&Itemid=30 [https://perma.cc/KBM9-8X4W].

County courtyard. Neither the guidelines nor Levy County's interpretation of the guidelines prohibit an unsuccessful applicant from filing subsequent new applications. ECF No. 50-22; ECF No. 50-36, at 6. And maybe if Plaintiffs try a little harder their next application will be accepted. But it's doubtful that's what Plaintiffs really want. *See* Dep. of Mr. Sparrow, ECF No. 49-3, at 144 ("I don't want to put a monument on the courthouse lawn. The atheists don't want a monument there."). Rather, like with their Establishment Clause claim, it seems that the only reason Plaintiffs filed these applications was to hastily manufacture standing. Indeed, when given an opportunity to file their amended application, Plaintiffs chose to argue about the guidelines instead of attempting to comply with them.[21] *See* ECF No 50-5, at 1–2, 7.

---

[21] Of course, one might argue that the entire guidelines were made with a sinister purpose in mind, and therefore trying to comply with them would be useless. That is, if Plaintiffs believed that Levy County intentionally crafted the guidelines to only allow religious monuments and keep out secular monuments, then Plaintiffs would not necessarily have to try to comply with those guidelines to bring their claim. But there is no evidence in the record to suggest that this is such a case. The guidelines were developed approximately five years before Mr. Sparrow expressed interest in having a secular monument placed in the courtyard. Moreover, there is no evidence in the record from which a jury could conclude that requiring insurance and indemnity agreements or requiring organizations to have offices in Levy County impacts religious applicants any differently than it would impact secular applicants.

### III. *Conclusion*

Plaintiffs brought a challenge to a religious monument that they're unlikely to visit in the future and only visited once in the past during a purposeful visit. Plaintiffs also challenged the denial of an application that did not comply with the applicable guidelines. Had counsel for Plaintiffs devoted more thought to these issues, then perhaps this Court could have addressed the merits of this dispute. But counsel didn't, so this case must be dismissed for lack of standing.

Accordingly,

**IT IS ORDERED:**

1. Defendant's motion for summary judgment, ECF No. 47, is **GRANTED**.

2. The Clerk shall enter judgment stating, "Plaintiffs' claims against Defendant are dismissed with prejudice."

3. The Clerk shall close the file.

**SO ORDERED on December 3, 2017.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**